No. 12,017.

LEGGE v. PETERSON, ET AL.

Decided April 15, 1929. Rehearing denied May 27, 1929.

Mr. CARLE WHITEHEAD, Mr. ALBERT VOGL, Mr. FLOYD F. MILES, for plaintiff in error.

Mr. J. E. McCALL, Mr. BENJAMIN GRIFFITH, for defendants in error.

*Department One.*

MR. JUSTICE ALTER delivered the opinion of the court.

THIS is an equitable action, in the nature of a creditor's bill, brought in the district court of Jefferson county by Adeline Tynon Legge, plaintiff in error, hereinafter referred to as plaintiff, against Emil G. Peterson, Eva E. Peterson, the First National Bank of Arvada, a corporation, A. E. Brown and J. T. Brown, defendants in error, all of whom, except A. E. Brown, appear in this court. Emil G. Peterson will hereinafter be referred to as judg-

ment debtor; Eva E. Peterson as lessee; the First National Bank of Arvada as the bank; and J. T. Brown as the lessor.

The plaintiff was dissatisfied with the judgment in the court below, and brings the cause here for review, assigning eleven errors, which may be classified as follows: (1) Failure to marshal assets; (2) allowance of attorney's fees to the bank; (3) allowance of certain harvesting costs, and (4) determination that no fraud or conspiracy existed.

The facts, out of which this action arose, may be stated as follows: The plaintiff owned a farm in Jefferson county, and the judgment debtor was her tenant for the year 1925. The judgment debtor became indebted to the plaintiff, and she, being dissatisfied with his failure to discharge that indebtedness, commenced her action in the district court of the City and County of Denver. On July 7, 1926, judgment was entered in her favor against the judgment debtor. An execution was issued and returned nulla bona. This action was then commenced.

Sometime during 1925, the lessor became the owner of the plaintiff's farm, and thereafter entered into a written lease with the judgment debtor and the lessee, wife of the judgment debtor, for the year 1926. The lease provided that the lessor should receive half of the crops raised during 1926, and the judgment debtor and lessee should receive the other half. The lessor and the lessees were to share the expense of harvesting the grain crops. The crops raised during 1926 were worth approximately $7,500.00.

The judgment debtor and lessee were in 1926, and for some time prior thereto had been, borrowers from the bank, and to secure the payment of their indebtedness had given a chattel mortgage upon cattle, farm animals, equipment and crops. The indebtedness, owing by these parties to the bank, predated the judgment obtained by the plaintiff against the judgment debtor. The chattel mortgage to the bank was signed and acknowledged by

the lessee and the judgment debtor. The lessee and judgment debtor had, at times, been borrowers from other banks, and, to secure their indebtedness, had given chattel mortgages upon practically the same property as secured the bank's indebtedness in this action.

During the year 1925, the judgment debtor was the plaintiff's tenant, and the lessee was the tenant of another owner on an adjoining farm. In conducting their two separate farm operations, the judgment debtor and lessee interchanged farm animals and farm equipment.

The plaintiff alleged fraud and a conspiracy to defeat the collection of her judgment, which was denied by the defendants. She prayed the appointment of a receiver, and the marshaling of assets and costs. The cause was tried to the court.

The plaintiff called the bank cashier for cross-examination under the statute, and he testified to the indebtedness due the bank. He produced the notes, signed by the judgment debtor and lessee, and the chattel mortgages securing the same.

It is contended by counsel for plaintiff that, prior to the trial of this cause in the court below, there was an oral agreement entered into between counsel, permitting the bank to sell and dispose of the interest of the judgment debtor and lessee in the crops. This was done, and the bank, upon receipt of the proceeds, had applied them to discharge the indebtedness of the parties to the bank. At the trial the notes of the parties were produced marked "Paid."

The plaintiff called the judgment debtor for cross-examination under the statute, and he testified that he was penniless; that none of the cattle, farm animals or equipment belonged to him, but that they were the property of the lessee; that the only property mentioned in the mortgage, in which he owned any interest, was the crops; and that prior to the levy of the execution, and early in 1926, he had transferred his interest in the lease and crops to his son, K. A. Peterson. K. A. Peterson is not

a party to this action. The witness testified that his signature to, and acknowledgment of, the chattel mortgage was brought about by the insistence of the bank, it contending, that inasmuch as he was interested in the crops, it was proper for him to join in the mortgage. He further testified that years prior to 1926, while living and farming in El Paso county, he gave a deed of trust on his lands, and a chattel mortgage upon his stock and equipment; that he failed; that the holder of the securities was foreclosing; and, by compromise with his wife, the lessee herein, she released her homestead rights to his debtor, in exchange for the personal property which was included in the chattel mortgage to the bank.

While this action was pending, the crops were being harvested, threshed and marketed, and the bank assumed charge thereof. It sold the grain, and, without deduction for harvesting expense, paid one-half of the proceeds to the lessor, and used the other half in payment of the indebtedness due it from the judgment debtor and lessee, and in payment of harvesting expenses.

At the conclusion of the evidence of the plaintiff, she renewed her objection to the method used by the bank, in thus paying itself, and asked that the note, unpaid, be endorsed to her, upon payment by her to the bank of the face and interest thereof, and that the bank also deliver to her all securities and monies of the judgment debtor and lessee, in its possession. This offer of subrogation was, in effect, refused. The defendants did not call witnesses in their behalf.

The court below set aside the transfer of the lease from the judgment debtor to his son, K. A. Peterson; allowed the bank an attorney's fee of $100; adjudged that the entire harvesting expenses were properly deducted from the lessee's and judgment debtor's share of the proceeds of the grain crops; entered judgment in favor of the plaintiff, and against both the judgment debtor and lessee, for the value of certain hay fed lessee's cattle;

denied marshaling; and, excepting as to the lease transfer, found neither fraud nor conspiracy.

1. Plaintiff insists that she was entitled to be subrogated to the bank's interest in the note and security because she would then be able to satisfy this indebtedness out of the proceeds of the sale of the cattle, farm animals and equipment, and thus have the entire interest of the judgment debtor, in the proceeds of the crop, to apply in payment of her judgment. This right of subrogation is insisted upon because the judgment debtor, while on the witness stand, in response to counsel's question, stated that the lessee should really pay the entire indebtedness to the bank, and further, in response to counsel's question, "And you are simply a figurehead in this transaction, is that right?" the witness answered "Yes." This evidence is not sufficient, in itself, to establish the relation of principal and surety. One who appears as a joint maker of a negotiable instrument can not thus so easily relieve himself of responsibilities. We may assume that if the lessee had been called as a witness, and the same question propounded to her by counsel, she would probably have replied that she was a "figurehead," and the entire indebtedness should be paid by the judgment debtor, her husband. The evidence in this case was not such as to justify the court in finding that the judgment debtor was the surety, and the lessee the principal.

"Before a court of equity will marshal assets or securities between two persons it must appear that they are creditors of the same debtor; that there are two funds belonging to that debtor; and that one of the creditors alone has a right to resort to both funds." 38 C. J. 1367, § 4. "As a general rule, before the doctrine of marshaling assets will be applied, there must be two funds or properties, at the time the equitable relief is sought, belonging to the common debtor of both creditors, on both of which funds one party has a claim or lien, and on one

only of which the other party has a claim or lien.'' 38 C. J. 1372, § 10.

''The rule of marshaling does not prevail except where both funds are in the hands of the common debtor of both creditors. The rule has no application to a case where one fund belongs to the common debtor and the other fund or property belongs to a third party. * * * It has been held that, where one creditor holds a claim against two joint debtors, and another creditor holds a claim against one of those two, equity will not, for the sake of the creditor who has the single claim, compel the other creditor to proceed against that one of his joint debtors against whom he has no claim; but that it may do so when it is equitable as between the two debtors that it should be done. In application of the general rule a creditor who has a claim against two debtors, one a principal and the other a surety, cannot be compelled by another creditor of the principal debtor to exhaust his remedy against the surety before proceeding against the principal.'' 38 C. J. 1373, 1374, § 12.

The law, as above quoted from Corpus Juris, finds support and approval in Story's Equity Jurisprudence, (14th Ed.), Vol. 2, p. 246, § 867, and 18 R. C. L., p. 460, § 9.

Our attention is directed to *Ross v. Duggan,* 5 Colo. 85, 101, as supporting the plaintiff's right to marshal, but a study of this case convinces us that the decision in it is in direct harmony with the general rule announced in Corpus Juris, supra.

The evidence in this case does not disclose that the bank and the plaintiff are creditors of the same debtor, but it does disclose that the plaintiff is the creditor of the judgment debtor alone, and that the bank is the creditor of both the judgment debtor and the lessee. The evidence in this case does not disclose two funds belonging to the common debtor, but it does disclose that there are two debtors jointly interested in one fund, and a separate fund; i. e., the cattle, farm animals and equipment, in which only one of the debtors, the lessee, is interested. It

will thus be readily seen that at least two of the necessary requisites to marshaling are lacking, and therefore, marshaling by subrogation was properly denied.

2. The bank prayed an allowance for attorney's fees, and the court entered judgment in its favor for the sum of $100. This is assigned as error. The note held by the bank contained the following provision: "And if placed in the hands of an attorney agree to pay a reasonable attorney's fee for collection thereof." The attorney who appeared in this action, representing the bank, also represented the lessee and judgment debtor. There was no evidence as to the reasonableness of the fee allowed, nor was there evidence that the bank had incurred any liability for, or paid, any attorney's fee. The allowance of attorney's fee, under these conditions, has been held to be error. *Gertner v. Bank,* 82 Colo. 13, 42, 257 Pac. 247, *Jones v. National Bank,* 74 Colo. 140, 142, 219 Pac. 780.

3. Error is assigned respecting the payment of certain harvesting expenses by the bank to the lessee. The lease contained the following provision: "It is further agreed * * * lessor shall pay one-half of the threshing bill and one-half of twine bill." The undisputed evidence is that the amount realized by the bank, from the sale of grain, was the sum of $7,379.19; that the twine bill was $165.63; that the threshing bill was $828.47, leaving a net amount of $6,385.09 to be divided, by the terms of the lease, equally between the lessor and the judgment debtor. The lessor would be entitled to the sum of $3,192.55, and the lessee and judgment debtor would be entitled to a like amount, less the notes to the bank, aggregating the sum of $2,775.00, or, the lessee and judgment debtor would be entitled to the sum of $417.55. Of this amount, the lessee would be entitled to one-half, or the sum of $208.77, and the plaintiff, the sum of $208.78, which represents the judgment debtor's interest in grain crops.

Instead of the bank making a division in accordance with the above, it paid to the lessor one-half of the gross value of the grain, and made a subtraction of the entire threshing bill from the share to which the lessee and judgment debtor were entitled. This method of division was approved by the court. It was not in accordance with the terms of the lease, and the bank, under its agreement, was obliged to make the division in accordance with those terms. The court erred in approving this method of distribution, and should have allowed the plaintiff judgment, on account of the sales of grain, in the sum of $208.78.

4. Error is assigned because the court refused to find fraud and conspiracy. Excepting as the court found that the transfer by the judgment debtor of his interest in the lease to his son, K. A. Peterson, was for the purpose of hindering, delaying and defrauding the judgment debtor's creditor, there was no evidence upon which fraud or conspiracy could be predicated, and the court did not err in so finding.

The court should have entered judgment in favor of the plaintiff and against the bank for the sum of $208.78, on account of the failure of the bank to deduct harvesting expenses, in accordance with the terms of the lease, as it had undertaken to do, and judgment, in this amount, is ordered. The court erred in allowing an attorney's fee of $100 to the bank, and for that reason, this allowance, and the judgment based thereon, is remanded for a new trial to the court. As thus modified, the judgment of the lower court is affirmed. Each party to pay their costs incurred in this court.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.