563 P.2d 964 (1977)
CONTINENTAL OIL COMPANY, a corporation, and Schmidt Construction, Inc., a Colorado Corporation, Plaintiffs-Appellees.
v.
Harry ZARING and Gladys Zaring, Jointly and Severally, and Harry Zaring and Associates, Ltd, a Colorado Corporation, Defendants-Appellants.
No. 76-217.
Colorado Court of Appeals, Div. I.
January 20, 1977.
Rehearing Denied February 17, 1977.
Certiorari Denied May 16, 1977.
*965 Gresham, Stifler, Murphy & Gentry, Kenneth Covell, Colorado Springs, for plaintiff-appellee Continental Oil Co.
J. Royce Renfrow, P. C., Colorado Springs, for plaintiff-appellee Schmidt Const. Inc.
*966 Robert Dunlap, Colorado Springs, for defendants-appellants.
ENOCH, Judge.
This is an appeal of a judgment ordering that Public Trustee deeds issued to defendants for two tracts of land be set aside, and ordering that the property be sold at a sheriff's sale. We affirm.
Prior to November 10, 1972, the two tracts of land covered by the deeds were part of the assets of Rocky Mountain Oil Paving, Inc. (Rocky Mountain). A note for approximately $254,000 payable to the Exchange National Bank (the Exchange note) was secured by a deed of trust on both tracts, and a $200,000 note to the same bank for an S.B.A. loan (the SBA note) was secured by a deed of trust on one of these tracts. Harry Zaring, until a stroke in 1971, was the general manager and largest minority shareholder of Rocky Mountain. Plaintiffs were unsecured creditors of Rocky Mountain.
On November 10, 1972, most of the operating assets of Rocky Mountain were sold to another company. The company name was sold as a part of this transaction, and for that reason the name of the original company was changed to Harry Zaring & Associates, Ltd. (the corporation). The tracts of land, accounts payable, accounts receivable, and miscellaneous assets remained a part of the corporation.
Concurrently with this transaction, the majority shareholder in the corporation sold his stock to the corporation for $133,400. To effect this purchase, Harry and Gladys Zaring advanced to the corporation $66,700 cash which was then paid to this majority shareholder, and in return the Zarings received a note (the Zaring note) from the corporation, secured by a deed to trust on the two tracts of land. The stock became treasury stock, and the Zarings therefore became the majority shareholders.
The court found that the proceeds of the sale of the operating assets were used to completely pay off the Exchange note, and reduce the amount due on the SBA note to $45,446.90. The court also found that the SBA note was paid in full by February 23, 1973, and further found that $42,000 of the Zaring note had been paid by the corporation as of April 1973. After being paid in full, the Exchange note and the SBA note were assigned by the bank to the Zarings, and the notes and deeds of trust were delivered to them.
In June 1973, the Zarings made election and demand for foreclosure on all three notes. At a public trustee sale, the Zarings bid $9,078.52 on the Exchange note, $9,054.93 on the SBA note, and $72,866.16 on the Zaring note. In the foreclosure proceedings, these amounts were alleged to be the amount of the debts still due on the notes, including principal, interest, and costs of collection. Payment was made by cancelling the notes. Public Trustee deeds were then issued to the Zarings.
Subsequent to this foreclosure action, plaintiffs' claims against the corporation were reduced to judgments and recorded, but there were no corporate assets to satisfy the judgments. Consequently, the present action challenging the dealings between the corporation and the Zarings was initiated.
After trial to the court, it ruled that the deeds, based on the foreclosure of the deeds of trust securing the Exchange note and the SBA note, were nullities because, at the time of the foreclosure, no amount was due on these notes. It also held the Zarings accountable to plaintiffs for the difference between the value of the property covered by the deeds and the debt actually due the Zarings, from the corporation, which debt was substantially less than the amount they bid. To satisfy the plaintiffs' judgments, the court ordered that the deeds be cancelled and that the property be sold at a sheriff's sale. The first $25,700 of the proceeds from this sale was to be paid to the Zarings to cover the amount the court determined to be due them from the corporation on their $66,700 note. The plaintiffs were then to be paid their judgments *967 against the corporation, and the remainder, if any, was to be paid to the corporation.
Defendants contend that the trial court, to their detriment and prejudice, allowed trial on an issue not specified in the pre-trial order. We disagree.
One of the issues stated in the pre-trial order was whether the transfers from the corporation to the Zarings should be set aside. The trial ultimately centered on whether the foreclosure of the deeds of trust worked a fraud on the creditors of the corporation. Contrary to defendants' contention, we conclude that the propriety of the foreclosure of the deeds of trust was an issue included within the scope of the pretrial order.
Defendants also object to the admission into evidence of several documents which were not timely endorsed. Defendants were given notice of these documents the day before trial, and the documents included the financial records of the corporation in 1972 and 1973 which were in possession of the corporation's accountant. When the use of these documents was objected to, the court offered defendants a continuance if they felt it necessary to prepare further as a result of this newly-endorsed evidence, and defendants declined the continuance. The court then ruled that the pre-trial order would be amended to allow admission of the documents and records.
These documents and records were in defendants' possession, and were reviewed with witnesses prior to trial while defendants' counsel was present. Defendants were not surprised or prejudiced by late endorsement of these documents and records, and thus there was no error in the amendment of the pre-trial order to allow their admission. See Landauer v. Huey, 143 Colo. 76, 352 P.2d 302; Francisco v. Cascade Investment Co., 29 Colo.App. 516, 486 P.2d 447. Furthermore, having refused the offer of a continuance, defendants are in no position to complain of prejudice caused by surprise. See Johnson v. Neel, 123 Colo. 377, 229 P.2d 939.
Defendants also contend that certain of these documents were not properly authenticated. We do not agree.
The Senior Vice President of the Exchange National Bank testified about the payment in full of the Exchange note on November 10, 1972, and of the SBA note by February 27, 1973. This testimony was based on various documents in the bank's records, including liability accounts relating to the loans, and the ledger accounts of the corporation's checking account. He stated that the records were not necessarily kept under his personal control and supervision, but were official bank records. His testimony that these were official bank records kept for the bank's use while a loan is active and in connection with a customer's checking account was evidence providing a sufficient foundation to permit the trial court to rule that the documents were admissible. Hobbs v. Breen, 74 Colo. 277, 220 P. 997.
Evidence that payments were made on the Zaring note by the corporation, and cumulative evidence that the corporate funds were used to pay the Exchange and SBA notes, was offered through the accountant who had both the corporation and the Zarings individually as clients. This witness testified from what he stated to be the books and records of the corporation, which were in his possession and which he used and relied upon in preparing the corporation's tax returns and financial reports. The records were prepared by employees of the corporation, and not by the accountant. After observing that the use to which these records were put showed that they must truly represent the financial dealings of the corporation, the court found the records to be "good evidence" and allowed the accountant to testify as to their contents.
The accountant's testimony indicated that these were records wherein defendant corporation represented to him its financial transactions with the intent that they be relied upon in matters other than litigation. This was sufficient authentication of these documents, and the admission of testimony *968 as to their contents was not error. Kipp v. Miller, 47 Colo. 598, 108 P. 164.
The bank records and testimony as to entries in the corporation records was sufficient evidence to support the trial court's conclusion that the Exchange and SBA notes were paid exclusively with corporate funds before assignment to Zaring. This factual conclusion therefore will not be disturbed on appeal. Holland Furnace Co. v. Robson, 157 Colo. 347, 402 P.2d 628.
The corporate records also reflected, according to the testimony of the accountant, that payments totalling $42,000 had been made by the corporation on the Zaring note through April 1973. The Zarings disputed this, claiming that payments made to them were either gifts or compensation owed Harry Zaring, or were payments on prior notes to Zaring from the corporation, and that any entries on the corporate books charging these payments against the note were done without their knowledge and approval. No indication of the partial payment appeared on the actual Zaring note.
Mere credits entered against an account on a party's books do not constitute payment, Wilson v. Watt, 327 S.W.2d 841 (Mo.), nor does payment by a debtor to his creditor's creditor. Martin v. Sharp & Fellows Contracting Co., 34 Cal.App. 584, 168 P. 373. Such actions may serve as payment, however, if they are intended by both parties to act as a discharge of the debt. See Bartholomew v. Emerson-Brantingham Implement Co., 68 Colo. 244, 187 P. 538. There was evidence in the record to support a finding that the actions here were intended by all parties to act as payment on the note, and the finding of payment will not be disturbed on appeal. Holland Furnace Co. v. Robson, supra.
Considering the factual determination that the Exchange and SBA notes had been completely paid off with corporate funds, and that $42,000 of the Zaring note had been paid off with corporate funds, we also conclude that the court properly set aside the foreclosure of the deeds of trust and the resulting Public Trustee deeds on this corporate property. Defendants bid in debts which they claimed amounted to almost $91,000 in principal, interest, and attorneys' fees, but which the court found totalled only $25,700.
A purchase of corporate assets at a mortgage sale by a person standing in a fiduciary relationship to the corporation may not be void ab initio as to creditors, but the fiduciary will not be permitted to reap a benefit to the detriment of those creditors. Hence, if he does purchase corporate assets, the fiduciary must account to those who have a right to demand it for the full value of the property so purchased. Fishel v. Goddard, 30 Colo. 147, 69 P. 607; accord, Crowley v. Green, 148 Colo. 142, 365 P.2d 230. The Zarings, by virtue of their majority shareholder status, and positions as officers, owed a fiduciary duty to creditors of the corporation, and were therefore subject to the rule announced in Fishel. See Epcon v. Bar B Que Baron, 32 Colo.App. 393, 512 P.2d 646. While Fishel was deciding only the case where the fiduciary was not the mortgagee, we find that the principle announced in that case is equally applicable when the fiduciary is the mortgagee, and purchases the property by bidding in his debt.
The trial court held that Fishel prohibits the Zarings from keeping for themselves more of a corporate asset than was necessary to pay the amount due them. We find no error in this holding.
The court then found that there was no evidence of the value of the tracts in question, but noted that defendants had bid almost $91,000 in the original sale. Instead of attempting to set a value, the court chose to set aside the Public Trustee deeds and order a sheriff's sale of the property. This was within the equity powers of the court. See Rossi v. Colorado Pulp & Paper Co., 88 Colo. 461, 299 P. 19. The priority of defendants' mortgage was recognized by the court's ruling that the first $25,700 of proceeds had to be paid to the defendants to satisfy their debt. The actual debt due defendants was all they were entitled to, *969 and the court did not abuse its discretion by its order.
Defendants contend that, if the deeds are set aside, they are entitled to interest, costs, and attorneys' fees as provided in their original note. We agree.
The cancellation of the Public Trustee deeds had the effect of reinstating the corporation's debt to the Zarings, and the Zarings are entitled to interest, costs, and attorneys' fees provided for in their note. However, attorneys' fees and costs of the original foreclosure should not be allowed, as the sale was set aside as a result of the Zarings' own improper action. Further, we observe that while the Zarings had title to the land in question they received an undetermined amount of rent from a lessee. This amount should be determined by the trial court and offset against the interest due. The Zarings should also be reimbursed for any taxes or other expenses personally paid on the property after the issuance of the Public Trustee deeds. Additionally, it appears from the record that the principal still owed to Zarings at foreclosure was $66,700, less $42,000, or $24,700, rather than $25,700 as stated in the court's findings.
The judgment of the trial court ordering vacation of the Public Trustee deeds and ordering a sale of the land is affirmed. The amount due the Zarings from the proceeds of the sheriff's sale is to be determined in accordance with the factors we have enumerated above.
COYTE and STERNBERG, JJ., concur.