599 P.2d 942 (1979)
WESTERN NATIONAL BANK OF CASPER, a National Banking Corporation, and the First Western Corporation, Plaintiffs-Appellees and Cross-Appellants,
v.
ABC DRILLING COMPANY, INC., a corporation, Defendant-Appellee and Cross-Appellant,
and
Citizens National Bank of Abilene, Texas, and Hoyle W. Lemens, Intervenors-Appellants and Cross-Appellees.
No. 78-115.
Colorado Court of Appeals, Div. II.
May 3, 1979.
Rehearings Denied June 7, 1979.
Certiorari Denied August 27, 1979.
*944 Francis A. Benedetti, Wray, for plaintiffs-appellees and cross-appellants.
Sandhouse & Sandhouse, Charles H. Sandhouse, Sterling, for defendant-appellee and cross-appellant.
Spiro A. Fotopulos, William D. Peterson, Denver, for intervenors-appellants and cross-appellees.
ENOCH, Judge.
This action concerns the priority of security interests in an oil drilling rig. The trial court found that the security interest of Citizens National Bank of Abilene, Texas (Citizens), had priority over the security interest of Western National Bank of Casper, Wyoming (Western). Western appeals from the judgment entered in favor of Citizens; Citizens appeals from the court's order that it marshal the assets of its debtor so as to benefit Western; and ABC Drilling Company, Inc., (ABC) appeals the court's judgment allowing Western to replevy the rig. We affirm in part and reverse in part.
In 1975 Lemens, one of the intervenors, purchased the rig in question for $140,000, and gave Citizens a purchase money security interest in it. Citizens' security interest was duly perfected in Texas, where Lemens had his principal place of business.
In 1976 Lemens negotiated an option to purchase the rig to one Opal Lee, who was a representative of ABC. Under the agreement, the terms of the purchase would be payment of the balance due on the loan by Citizens (then $130,000), plus $45,000 cash to Lemens. Before receiving payment of any kind, Lemens gave Lee a bill of sale for the rig indicating he had been paid $45,000. He also delivered possession of the rig to Lee. Shortly thereafter Lee gave ABC a bill of sale which alleged that the rig was free from all encumbrances except the security interest of Citizens, ABC then took possession of the rig, and in the course of its drilling operations, moved the rig to Kansas, Nebraska, Wyoming, and Colorado. The evidence shows that although Citizens was aware that Lemens might have a buyer for the rig, Citizens thought the buyer was to pay off the entire loan before the sale would be consummated.
Meanwhile ABC had negotiated several unsecured operating loans with Western in Wyoming, and had opened two checking accounts with that bank. The amounts of the loans and overdrafts in the checking accounts increased, and Western received an assignment of accounts receivable from ABC and a security interest in the rig, which ABC purported to own. ABC's financial statement indicated a $130,000 liability to a bank in Abilene, but Western did not inquire whether the liability was secured. Western's security interest was duly perfected in Oklahoma where ABC had its principal place of business. The trial court found that Western acted in good faith and without notice of the option contract which gave ABC voidable title in the rig.
*945 ABC continued to increase the overdrafts in its checking accounts to the point that in February 1977 it owed over $300,000 to Western on the loans and the overdrafts. In addition, ABC made only one payment of $5,000 to Lemens, which he applied to the $45,000 owed him under the option contract. When Western discovered ABC had diverted proceeds away from an assigned contract, Western promptly instituted an action in replevin.
Citizens and Lemens intervened at a show cause hearing demanding possession, alleging a prior security interest and default by virtue of Western's seizure of the rig. The court granted possession to Western. Subsequently the court found that Citizens' security interest was prior to Western's but that Citizens would be required to marshal the assets of Lemens.

I.
Western contends that the trial court erred in not finding that Citizens lost its security interest, or the priority of the security interest, in the rig. We disagree.
Western's first argument is that Citizens authorized the "sale" by Lemens to Opal Lee and such authorization caused the security interest to terminate under § 4-9-306(2), C.R.S.1973 (1978 Cum.Supp.). In its findings of fact, however, the trial court specifically stated that: "Citizens did not authorize the sale of the rig . . . or waive its security interest which continued in the rig after sale (4-9-306(2), C.R.S.1973). . .." Findings of fact by the trial court are binding where supported by competent evidence. Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336 (1970). The evidence here reveals that at the most Citizens would have consented to the sale only if ABC had immediately paid the existing mortgage. Therefore Citizens' security interest remained perfected after the transfer to ABC. See Sterling Community Federal Credit Union v. Wilcox Skelly Service, 28 Colo.App. 278, 472 P.2d 203 (1970).
Western also suggests that because ABC was a buyer in the ordinary course of business, ABC took free of Citizens' security interest, under the terms of § 4-9-307, C.R.S.1973. By this reasoning it would follow that ABC could give Western a prior security interest in the rig. We disagree.
A "buyer in the ordinary course of business" must purchase from a person in the business of selling goods of that kind. Section 4-1-201(9), C.R.S.1973 (1978 Cum.Supp.). There was no evidence, and the court made no finding, that Lemens was engaged in the business of selling oil rigs. Instead, the court found that the sale was not in the ordinary course of Lemens' business and that he had not bought the rig solely for the purpose of resale. Thus Citizens did not lose its security interest when ABC purchased the rig. See Broncucia v. McGee, supra.
Western's final contention in support of its argument that Citizens lost its security interest is based on § 4-2-403(1), C.R.S.1973, which provides that a person with voidable title (here ABC) has power to transfer a good title to a good faith purchaser for value (Western). Contrary to Western's position, however, we hold that § 4-2-403(1), C.R.S.1973, is not applicable to destroy prior perfected security interests in favor of a subsequent holder of a security interest.
Section 4-2-402(3)(a), C.R.S.1973, specifically provides that nothing in Article 2 shall be deemed to impair the rights of creditors of the seller under Article 9. In addition, the provisions of Article 9 apply to any transaction, except two not relevant here, which is intended to create a security interest. Section 4-2-403(1), C.R.S.1973, thus does not apply to this situation where ABC is purporting to give Western only a security interest in the rig. Therefore the trial court was correct in ruling that Citizens, whose security interest was filed before Western's, had priority in the rig. See § 4-9-312(5)(a), C.R.S.1973 (1978 Cum.Supp.).
*946 We find no merit in Western's argument that the doctrine of unjust enrichment applies in this case.

II.
Citizens argues that the court erred in ordering the marshaling of Lemens' assets. We agree.
Before the doctrine of marshaling assets is applicable there must be a common debtor of the two creditors. Legge v. Peterson, 85 Colo. 462, 277 P. 786 (1929). There was no evidence in this case that Lemens was a debtor of Western, nor that ABC was a debtor of Citizens. Instead, the court stated that "Lemens' conduct, in the sale of the . . . rig and the financing transactions of ABC with plaintiff, is of such a nature and extent that the court should order that marshalling of assets take place even though Lemens is not a common debtor of Western and Citizens." Such expansion of the doctrine of marshaling has not been sanctioned by any precedent in Colorado and is not warranted here. Therefore, because there was no common debtor, the trial court erred in ordering marshaling.
Citizens also argues that the court erred in allowing Western to take possession of the rig and to sell it. We disagree.
A secured creditor has a right to possession of collateral upon the default of the debtor. Section 4-9-503, C.R.S.1973. The right to possession is not limited by the statute to the creditor whose security interest has the higher priority. Thus it was not error for the trial court to award possession to Western, which was the first secured party to seize the rig after default.
Similarly it was not error for the trial court to order the rig to be sold to the buyer which Western had procured. The evidence shows and Citizens stipulated to the court that it would cooperate to sell the rig. Several months later the rig had not been sold, but Western was incurring storage costs for retaining the rig. Western found a buyer who agreed to pay nearly the same amount that another buyer, located by Citizens, indicated was acceptable. After informing Citizens of the possible buyer, Western obtained an order from the court authorizing the sale. Although the sale price was less than that hoped for, there was no evidence that the sale was conducted in a commercially unreasonable manner or without adequate notice to Citizens. See § 4-9-504, C.R.S.1973 (1978 Cum.Supp.). Cf. Young v. Golden State Bank, Colo.App., 560 P.2d 855 (1977). Therefore it was not error to order the sale or to deny damages allegedly resulting from the sale.

III.
ABC argues that the trial court erred in allowing Western to replevy the rig. ABC's contention is that Western should have applied the proceeds received from the assigned accounts receivable to the two promissory notes for $50,000 and $55,000 secured by the rig and the accounts. Instead, Western applied the proceeds to the overdrafts created in ABC's checking accounts. ABC argues that its promissory notes would not have been in default had Western properly applied the proceeds, and therefore replevin of the rig was error. We disagree.
Each of the promissory notes specifically was secured by "all inventory, equipment, tools, furniture & fixtures and accounts receivable." In addition each of the notes was secured by a general security provision: "Undersigned grant to bank a lien for payment of this note and all other liabilities of the Undersigned to bank (. . . including overdrafts . . .) on all property of Undersigned of every description now or hereafter in the control of bank . . . hereby authorizing bank to appropriate and apply such balance and credits toward payment of any of said liabilities including this note." (emphasis added) The provision thus allows the bank to apply the proceeds from accounts receivable assigned to it to *947 the payment of any liability, including the overdrafts.
The trial court found that the entire amount owed by ABC was secured by the security agreements, which referred to the promissory notes, and that the security included both the rig and the various accounts receivable. In effect the provision merely authorized the bank to exercise multiple remedies to recover on the accounts owed to it by the debtor. See Allied Sheet Metal Fabricators, Inc. v. Peoples National Bank, 10 Wash.App. 530, 518 P.2d 734, cert. denied, 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974). Thus Western was justified in applying the proceeds from the accounts receivable to the overdrafts rather than to the loans evidenced by the promissory notes, and the trial court did not err in allowing replevin of the rig based on ABC's default.
ABC next suggests that the trial court erred in refusing to allow a jury to hear the case after its timely demand for jury trial. We disagree.
Section 4-9-503(1), C.R.S.1973, states that, upon the default of the debtor, the secured party may take possession of the collateral and dispose of it without judicial process. Thus the secured party's remedy is in the nature of a foreclosure, an equitable action which is to be tried to the court. Miller v. District Court, 154 Colo. 125, 388 P.2d 763 (1964). Although C.R.C.P. 38 provides that a party is entitled to a jury trial upon demand in an action for the recovery of specific real or personal property, the rule is not intended to extend to actions involving the repossession of collateral by a secured party. See also Setchell v. Dellacroce, 169 Colo. 212, 454 P.2d 804 (1969); Plains Iron Works Co. v. Haggott, 72 Colo. 228, 210 P. 696 (1922).
Finally ABC contends that the court erred in admitting into evidence summaries prepared by Western showing the deposits into and withdrawals from ABC's checking accounts. We do not agree.
Where information is contained in massive records and documents kept in the ordinary course of business, it is not error to admit summaries indicating the pertinent information in order to expedite litigation. See Joseph W. O'Brien Co. v. Highland Lake Construction Co., 17 Ill.App.3d 237, 307 N.E.2d 761 (1974). Cf. Beckman v. Starlight Building Corp., 38 Colo.App. 376, 557 P.2d 420 (1976). Here the president of Western testified that the summaries were based on bank records kept in the ordinary course of business, that the summaries were prepared under his supervision and control, and that he had personally compared original bank records against the exhibits. See Continental Oil Co. v. Zaring, 38 Colo.App. 537, 563 P.2d 964 (1977).
In addition, Western had made the summaries available to ABC several months prior to trial. See Aldridge v. Burchfiel, 421 P.2d 655 (Okl.1966). ABC presented no evidence showing its liability was in any amount different than that testified to by the president of the bank or represented by the summaries. It was therefore not error to admit the summaries into evidence and to rely on them, along with the testimony of the witnesses, to ascertain the total liability of ABC to Western.
That part of the judgment ordering Citizens to marshal is reversed. The remainder of the judgment is affirmed, and the cause is remanded to the trial court for such further proceedings as may be necessary.
BERMAN and VAN CISE, JJ., concur.