**MORGAN COUNTY FEEDERS, INC.,
a Colorado corporation, Plaintiff–
Appellee,**

v.

**James L. McCORMICK, Jr., Interested
Third–Party–Appellant.**

**No. 91CA0790.**

Colorado Court of Appeals,
Div. III.

July 30, 1992.

Berryhill, Cage & North, P.C., Jack W. Berryhill, Gary C. Moschetti, Magdalena C. Bowen, Denver, for plaintiff-appellee.

Johnson & McLachlan, George McLachlan, Michael P. Strait, Lamar, for interested third-party-appellant.

Opinion by Judge ROTHENBERG.

Interested Third–Party, James L. McCormick, appeals the judgment entered in favor of plaintiff, Morgan County Feeders, Inc. (Morgan County Feeders) and garnishee, Roy Creamer d/b/a XY Farm and Ranch Company. We affirm.

In 1990, Morgan County Feeders, as a secured creditor, obtained a default judgment against Neil Allen for $1,461,019. Morgan County Feeders attempted to garnish 45 longhorn cows and one bull that were in the possession of Roy Creamer. Creamer contested the garnishment, and Morgan County Feeders filed a post-judgment motion for issuance of a writ of garnishment and to join third-persons who also claimed an interest in the cattle. The court granted Morgan County Feeders' motion. The parties then stipulated to the sale of

the cattle, and the proceeds were placed in the registry of the court pending a hearing.

At the hearing, Morgan County Feeders claimed a priority in the proceeds based on its perfected security interest arising from a security agreement with Allen, which, in part, contained an after-acquired property clause. McCormick claimed an interest in the proceeds based on an oral agreement with Allen to buy the cattle.

After making extensive findings of fact and conclusions of law, the trial court entered judgment in favor of Morgan County Feeders, finding that the 45 longhorn cattle were "equipment" and not "inventory" under the Uniform Commercial Code and that Allen had no authority to dispose of the longhorn cattle free of Morgan County Feeders' perfected security interest. Accordingly, the court awarded Morgan County Feeders the sale proceeds minus certain costs owed to Creamer. McCormick is the only party that has appealed the judgment.

## I.

■ McCormick first contends that the trial court erred in determining that the cattle purchased by Allen were equipment, rather than inventory. We disagree.

Under the Uniform Commercial Code, "goods" are defined as, "all things which are moveable at the time the security interest attaches...." Section 4–9–105(1)(h), C.R.S. (1991 Cum.Supp.). Goods are classified under four major types which are mutually exclusive. These include: consumer goods; equipment; farm products; and inventory. *See* § 4–9–109, C.R.S.

Here, the parties agree that the cattle constitute "goods" under the Uniform Commercial Code. They further agree that the cattle are not "farm products." Thus, the remaining issue surrounding the cattle is whether they should be designated as inventory or equipment. The distinction is important because buyers of inventory in the ordinary course of business take free of perfected security interests. *See* § 4–9–307(1)(a), C.R.S. (1991 Cum.Supp.); § 4–1–201(9), C.R.S.

Section 4–9–109(2), C.R.S., provides that goods are equipment:

> if they are used or bought for use primarily in business (including farming or a profession) ... or if the goods are not included in the definitions of inventory, farm products, or consumer goods.

In contrast, § 4–9–109(4), C.R.S., provides that goods are inventory:

> if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are ... materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

In ascertaining whether goods are inventory or equipment, the principal use of the property is determinative. Section 4–9–109, C.R.S. (Official Comment 2). The factors to be considered in determining principal use include whether the goods are for immediate or ultimate sale and whether they have a relatively long or short period of use in the business. Section 4–9–109, C.R.S. (Official Comment 3); *First Colorado Bank & Trust v. Plantation Inn, Ltd.,* 767 P.2d 812 (Colo.App.1988).

■ Goods used in a business are equipment when they are fixed assets or have, as identifiable units, a relatively long period of use. They are inventory, even though not held for sale, if they are used up or consumed in a short period of time in the production of some end product. *First Colorado Bank & Trust v. Plantation Inn, Ltd., supra.*

■ The classification of "goods" under § 4–9–109 is a question of fact, and therefore, the trial court's classification must be upheld if there is support in the record for that determination. *See First Colorado Bank & Trust v. Plantation Inn, Ltd., supra.*

At trial, the court determined that the longhorn cattle were "equipment" and not "inventory" because:

> Allen did not acquire or hold them for the principal purpose of immediate or ultimate sale or lease.... Instead, the cattle were to be used principally for

recreational cattle drives.... While Allen might have occasionally leased the cattle to other entrepreneurs, it was his intention to utilize the cattle principally in his own recreational business....

Thus, the court concluded that McCormick bought the cattle subject to Morgan County Feeders' security interest.

Although we recognize that the classification of cattle as "equipment," rather than "inventory," is highly unusual, we also recognize that the evidence presented to the trial court disclosed unusual circumstances, and we conclude that the record supports the court's classification.

Allen testified that his purpose for purchasing the longhorn cows was to use them on cattle drives and that these cows have a relatively long period of use in comparison to rodeo calves and feeder cattle. Several other witnesses also testified that Allen had stated his intent to use the longhorn cows for recreational cattle drives. Thus, the trial court was justified in rejecting McCormick's contention that the cattle were purchased only for rodeos. And, it did not err in finding that, under these unique circumstances, the cattle should be classified as "equipment."

In light of this conclusion, we need not address McCormick's additional contention that the trial court erred in finding that McCormick was not a buyer in the ordinary course of business.

## II.

■ McCormick next contends that Morgan County Feeders authorized the sale of the 45 longhorn cows, and thereby waived its security interest in them, by allowing Allen to purchase them from his own checking account without remitting the proceeds to Morgan County Feeders. We disagree.

Section 4–9–306(2), C.R.S. (1991 Cum. Supp.) provides:

Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof *unless the disposition was authorized by the se-cured party in the security agreement or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor. (emphasis added)

The security agreement between Allen and Morgan County Feeders provided:

Cattle shall be released from Secured Party's security interest from time-to-time in conjunction with the sale of such cattle provided that Secured Party receives concurrently with such release, an amount equal to the entire net proceeds to Debtor from such sale until the entire outstanding principal balance of the Loans and all accrued interest is due and payable in full.

. . . .

Debtor shall be in default under this Agreement upon the happening of any of the following events or conditions (Events of Default):

. . . .

(e) the sale, lease, assignment, transfer or other disposition of a substantial amount of the assets of the Debtor except for cattle disposed of in the ordinary course of business ...

(f) ... sale or encumbrance of the Cattle (except as specifically allowed herein)....

Here, it is uncontroverted that Morgan County Feeders did not give written consent for the sale of the cattle to McCormick. Thus, any authorization must be implied from the conduct of the parties. We conclude there is record support for the trial court's conclusion that Morgan County Feeders did not impliedly waive its security interest.

■ Implied authorization is a factual determination based upon the circumstances of the parties, the nature of the collateral, the course of dealing of the parties, and the usage of trade. *Mid–States Sales Co. v. Mountain Empire Dairymen's Ass'n,* 741 P.2d 342 (Colo.App.1987).

■ In certain circumstances, course of performance, which looks to repeated occasions or performance by the parties after or under the contract, is relevant to show a

waiver or modification of the agreement. Section 4-2-208, C.R.S.; § 4-1-205, C.R.S. (Official Comment 2). And, evidence of course of performance is admissible if it does not directly contradict the terms of a written agreement but merely explains or supplements it. *Great Western Sugar Co. v. Northern Natural Gas Co.,* 661 P.2d 684 (Colo.App.1982). *See generally* Annot., 37 A.L.R. 4th 787 (1985).

At trial, Allen testified that, "in most cases," he paid for cattle from his checking account and then reimbursed the account with drafts drawn from Morgan County Feeders and made payable to himself. He also testified that he then either reimbursed Morgan County Feeders at a later date, or bought additional cattle. Finally, he testified that he did not recall ever having to obtain Morgan County Feeders' consent before purchasing cattle.

In contrast, Morgan County Feeders' cattle inspector testified that he did not know how Allen's business was run but that "everyone else" was required to notify Morgan County Feeders of sales of collateral and to obtain Morgan County Feeders' consent prior to the sales. Moreover, there was no evidence presented that Morgan County Feeders would have authorized Allen's sale of the cattle to McCormick without assurance of its receipt of the net proceeds.

Thus, there is evidence, albeit conflicting, to support the trial court's finding that Morgan County Feeders did not authorize the sale of the cattle to McCormick. *See U.S. v. Winter Livestock Commission,* 924 F.2d 986 (10th Cir.1991). *See also Western National Bank v. ABC Drilling Co.,* 42 Colo.App. 407, 599 P.2d 942 (1979); *Colorado Bank & Trust Co. v. Western Slope Investments, Inc.,* 36 Colo.App. 149, 539 P.2d 501 (1975) (auction company liable in the absence of clear unequivocal and decisive act by lender consenting to or ratifying sale).

Nor do we view *Moffat County State Bank v. Producers Livestock Marketing Ass'n,* 598 F.Supp. 1562 (D.Colo.1984) or *First National Bank & Trust v. Iowa Beef Processors, Inc.,* 626 F.2d 764 (10th Cir. 1980) as requiring a different result. In *Moffat County,* the parties stipulated that the vice-president of the bank which held the security interest advised the debtor that he could sell his collateral, provided the debtor promptly brought the proceeds from the sales to the bank. Accordingly, the court found that the bank had expressly consented to the debtor's sale of the cattle and, as such, had waived its security interest in those cattle.

Similarly, in *First National Bank & Trust,* a case construing Oklahoma's version of the Uniform Commercial Code, the court noted that the bank holding the debtor's security interest acknowledged it would not have made a complaint if the proceeds from the sale of the collateral had been applied against the note as required in the security agreement. Thus, the court concluded that the bank gave the debtor actual authority to sell the collateral and held that the bank had waived its security interest.

Initially, we note that the vitality of both decisions has been substantially eroded by *U.S. v. Winter Livestock Commission, supra,* announced in 1991. Furthermore, even assuming the continued precedential value of *Moffat County* and *First National Bank,* we agree with the trial court that the facts here are distinguishable from those cases in several important respects: (1) Morgan County Feeders did not give Allen either actual or express authority to sell the cattle; (2) McCormick was not a good faith purchaser because he expressly designated Allen as his agent in the transaction with the result that Allen's knowledge of the facts and circumstances were imputed to McCormick; (3) the goods were sold privately rather than through an established marketing entity such as an auction barn or slaughterhouse and no effort was made to comply with applicable brand inspection laws; (4) the goods were not "farm products" and the seller (Allen) was not engaged in farming operations; (5) on December 14, 1989, Allen signed an agreement for repossession because he was in default and Morgan County Feeders be-

came entitled to immediate possession of the cattle; and (6) after notice of the default, Allen nevertheless sold the cattle to McCormick on April 2, 1990, knowing that he lacked authority to do so.

In summary, while the courts in *Moffat County* and *First National Bank* analyzed the competing interests between two innocent parties, the trial court here faced no such dilemma. Therefore, we do not view *Moffat County* or *First National Bank* as dispositive.

The judgment is affirmed.

CRISWELL and RULAND, JJ., concur.