IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00322-CV

 

Terry Scott,

                                                                      Appellant

 v.

 

Citizen's National Bank,

                                                                      Appellee

 

 

 



From the 40th District Court

Ellis County, Texas

Trial Court # 62048

 



MEMORANDUM Opinion AFTER REMAND



 

This case involves a suit over the
alleged nonpayment of a promissory note.  One of the borrowers, Terry Scott, had
pledged his Cessna airplane as collateral on the loan.  After a bench trial,
the judge rendered judgment against Scott and the other two borrowers for the
loan amount, interest, attorney’s fees, and foreclosure of the lien against the
airplane.  On appeal, Scott attacks the judgment in six issues.  Finding no
error, we will affirm the judgment.

 

 

THE LOAN

In June 2000, Richard Karamatic,
Richard Engel, and Scott secured a $25,250[1] loan
from Citizen’s National Bank (“Bank”) to start a business, Inoquest
Communications (“Inoquest”).  Under the terms of the promissory note that
Engel, Karamatic, and Scott signed, repayment on the debt was to be made no
later than December 21, 2000.  For several months, no payments were made on the
loan.  On October 31, 2000, Albert Garcia, a Bank employee, approved an
internal funds transfer in the amount of $26,267.10 from an Inoquest account to
pay the balance of the note.  Later, Engel contacted Garcia and instructed him
to reverse the transaction.  Garcia complied with this instruction and returned
the funds to the Inoquest account.

THE SUIT

In May 2002, the Bank sued Karamatic,
Scott, and Engel to recover the loan amount, interest, and attorney’s fees, and
for foreclosure of the lien on the collateral (the airplane).  Scott filed a
general denial and affirmative defenses that (1) the debt had been paid in full
by Inoquest, and (2) accord and satisfaction.  He also filed a counterclaim
seeking (1) declaratory judgment that the note and security agreement had been
discharged, (2) relief for wrongful sequestration, and (3) attorney’s fees. 
After a one-day bench trial, the judge rendered judgment against Karamatic,
Scott, and Engel, jointly and severally, for $32,176.27 principal and interest,
$14,000 in attorney’s fees,[2] and
foreclosure of the lien on the airplane.

Scott timely filed a Request for
Findings of Fact and Conclusions of Law.  After he filed a Notice of Past Due
Findings of Fact and Conclusions of Law, the court signed and filed the Bank’s
proposed findings and conclusions, which essentially state that there had been
no payment on the note.  Scott filed a Request for Additional and Amended
Findings and Conclusions of Law, seeking findings that the loan had been paid
off and the payoff was not the result of a mistake by the Bank.  The court did
not respond to this request, and Scott timely filed his notice of appeal. 
Engel and Karamatic did not appeal the trial court's judgment.

We reversed the judgment against Scott,
rendered judgment for him on the note, and remanded the cause for consideration
of his counterclaim.  In a per curiam opinion, the supreme court, without
addressing the merits, reversed our judgment, holding that we failed to
explain, with specificity, why we substituted our judgment for that of the
trial court.  Citizens Nat’l Bank v. Scott, 195 S.W.3d 94, 96 (Tex. 2006) (citing Gonzalez v. McAllen Med. Ctr., 195 S.W.3d 680 (Tex. 2006)).  The
case was remanded to us “for more detailed consideration.”  Id.  After
remand, both parties filed supplemental briefs.  10th Tex. App. (Waco) Loc. R. 19.

ISSUES ON APPEAL

Scott attacks the judgment in six
issues:

1.          
Whether the evidence
established as a matter of law that the note was paid on October 31, 2000, when
the Bank applied Inoquest’s funds to the note in the full amount of the note.

2.          
Whether the “reversal” of the
transaction, without notice to Scott, had the legal effect of reinstating
Scott’s liability on the note.

3.          
Whether the Bank can contend
for the first time after the court’s judgment and findings that the court found
that the debit was a “mistake,” not having pled mistake, offered evidence of a
mistake, or obtained an express finding of mistake.

4.          
Whether the court erred in failing
to make Scott’s requested findings, based on undisputed evidence, that the note
was paid on October 31, 2000, by the transfer of funds from Inoquest and that
the application of Inoquest’s funds to the note was not the result of a mistake
by the Bank and, based on those findings, erred in failing to conclude as a
matter of law that the note had been paid.

5.          
When the undisputed evidence
shows that the Bank applied Inoquest’s funds to payment of the note in the full
amount, whether the Bank properly reversed the transaction without notice to
Scott; whether the court could “ignore the evidence” to make findings of fact
concerning non-payment of the debt and the Bank’s not having agreed to
discharge Scott from the debt or any obligation related to it; whether the
court properly concluded that there had been no payment of the note.

6.          
Whether the court erred in
failing to amend its findings and conclusions, as Scott requested, to reflect
the undisputed evidence of payment.

As we noted on original submission,
each of these issues essentially asserts that the undisputed evidence shows
that the note was fully paid with Inoquest’s funds on October 31, 2000, and
that the Bank’s reversal of that transaction had no legal effect as to Scott. 
In fact, that was the relative positions of the parties on original submission
and is their positions after remand.  Scott contends that the October 31
transaction paid the note and extinguished his liability; the Bank contends
that the “reversal” of that transaction was proper and that Scott’s liability
on the note had not been extinguished.

STANDARD OF REVIEW

When a party who had the burden of
proof brings a “legal sufficiency” issue complaining of an adverse finding,
that party must demonstrate that the evidence establishes conclusively, i.e.,
as a “matter of law,” all vital facts in support of the finding sought by the
party.  Dow Chemical Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).  In this
type of review, we first examine the record for evidence supporting the adverse
finding.  Id.  If more than a scintilla of evidence supports the
adverse finding, our inquiry ends; but if no evidence supports the adverse
finding, we review the entire record to determine if the contrary proposition
is established as a matter of law.  Id.

In reviewing the legal sufficiency of
the evidence, we view the evidence in the light favorable to the verdict,
crediting favorable evidence if a reasonable factfinder could, and disregarding
contrary evidence unless a reasonable factfinder could not.  See City of Keller v. Wilson, 168 S.W.3d 802, 807, 822 (Tex. 2005).  There is legally
insufficient evidence or “no evidence” of a vital fact when (a) there is a
complete absence of evidence of a vital fact; (b) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (c) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (d) the evidence conclusively establishes the opposite of
the vital fact.  Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  More than a
scintilla of evidence exists when the evidence supporting the finding, as a
whole, “rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.”  Id. (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)).

ISSUE ONE:  Does the evidence establish “payment”
as a matter of law?

The Bank argues that Scott has waived
this issue because he asserts in his brief “this is not a ‘sufficiency of the
evidence’ situation.”  We have examined Scott’s issues with that in mind and,
finding that he argues “matter of law” points, “conclusive evidence” points,
and “undisputed evidence” points, reject the waiver argument.  The
“sufficiency” referred to in his brief is “factual sufficiency” of the evidence,
which he affirmed in oral argument is not raised in this appeal.

The trial court concluded there had
been no “payment.”  Scott says the evidence conclusively establishes the facts
necessary to show the contrary.  He concedes that the testimony of the
witnesses conflicted on several points, including whose idea the October 31 transaction
was, when the later “reversal” was, and how much time elapsed between the two. 
He says, however, that there is no factual dispute about whether Garcia made an
internal bank transaction to pay the note with Inoquest’s funds but then
reversed that transaction.

“Payment is defined as the discharge
of an obligation by the actual or constructive delivery of money or its
equivalent by the obligor or by someone for him for the purpose of
extinguishing the obligation, wholly or partially, and the acceptance of it by
the obligee.”  First Heights Bank FSB v. Guttierrez, 852 S.W.2d 596, 605
(Tex. App.—Corpus Christi 1993, writ denied); accord Gillman v. Phillips
Petroleum Co., 601 S.W.2d 513, 515 (Tex. Civ. App.—Amarillo 1980, no writ).

Focusing on the October 31
transaction, we find that the record shows that Garcia, an employee and loan
officer of the Bank, testified that there was an internal bank transaction made
whereby funds were “taken out” of Inoquest’s account and used to “pay off” the
loan, that he as the loan officer was authorized to make that transaction, that
Engel (his main contact with respect to the loan) instructed him to make the
transaction, that no other person besides Engel gave him any instructions
concerning the transaction, that the Bank consented to the transaction at the
time, and that the Bank’s “loan history” document shows a payment made on
October 31, 2000.

This testimony conclusively
establishes the facts of the October 31 transaction whereby the Bank debited
Inoquest’s account and credited the note in the same amount.  There is no evidence
to show that these events did not occur.

The Bank argues that unless, at the
time of delivery, the debtor intends that the delivery constitute payment, the
delivery of funds, whether actual or constructive, does not constitute payment
of a debt.  Put another way: crediting an account is not always sufficient to
constitute payment.  See Continential Oil Co. v. Zaring, 563 P.2d 964,
968 (Colo. App. 1977) (“Mere credits entered against an account on a party’s
books do not constitute payment . . . .  Such actions may serve as payment,
however, if they are intended by both parties to act as a discharge of the
debt.”).

The Amarillo court quoted an earlier Texarkana case: “Whether or not a transaction constitutes payment in termination of
liability depends upon the intention of the parties, and acts which might
otherwise constitute payment will not do so when the parties do not so
intend.”  Gillman, 601 S.W.2d at 515 (citing Greenwood v. Senter,
44 S.W.2d 504, 505 (Tex. Civ. App.—Texarkana 1931), aff'd in part and rev'd
in part, 61 S.W.2d 812 (Tex. Comm. App. 1933, holding approved)).  The
court, upholding the trial court’s finding of payment, went on to say:  “Moreover,
in the absence of expressed mutual intent, the best evidence of the parties'
intent is the interpretation they placed upon their transaction.”  Id. at 516.  “In the situation presented by this record, the acts of the parties
themselves furnish the construction they mutually placed upon their transaction
at the time.”  Id.

Here, some period of time elapsed
between the October 31 internal bank transaction and the reversal of that
transaction by the Bank.  Garcia testified that Engel called him “approximately
an hour” after the transaction was completed.  He said:

·              
he told Engel that he had done
exactly as he was told: “pay off the loan from an account where [Engel] was an
authorized signer”; 

·              
Engel told him that he
(Garcia) did not have authority to make the transaction;

·              
Engel said he did not want the
loan paid that way and that it would be paid later; and

·              
Garcia told Engel he did not
have authority to reverse the payoff—that he would have to “get with management”
about that.

He testified that, after consulting
with management, he reversed the transaction later that same day.  Garcia
acknowledged that the “posting date” for the reversal transaction was November
6, 2000.[3]  He
could not account for the time difference other than as a “lag in workload.” 
He said that the reversal was “pretty unusual” and that he had not reversed a
payment on any other note.

Engel testified that several days
after October 31, he went to Garcia’s office to discuss the matter.  He said he
was not in Waxahachie on October 31, so could not have asked Garcia to pay off
the note or have discussed it with Garcia on that date after the transaction. 
He testified that Pete Grosso, “in the accompany of Richard Karamatic,” caused
the note to be paid off.  Engel answered “No” when asked directly: “Was it then
a mistake that the note got paid off originally?”  He testified that Grosso was
authorized on Inoquest’s account, was on Inoquest’s board of directors, and was
authorized to do it.  He said he was aware of no objection by any officer of
Inoquest to the payment of the note.

Karamatic testified that he was in a
meeting with Grosso at Inoquest on October 31 when Engel came in.  He said Grosso
told Engel that the note had been paid, and Engel began to “rant and rave about
we can’t do that.”  He testified that Engel said, “I’m going to straighten this
out,” but Engel did not make a phone call from the office.

Both Engel and Karamatic testified
that the reason not to pay the note was that it would “free up” the collateral
(the airplane), which was an asset of Scott’s, and that Scott was getting a
divorce.

Based on the conflicting evidence
about who authorized the use of Inoquest’s funds for the transaction, the
conflict about the timing of the instructions to reverse it, and the undisputed
evidence that it was to prevent the release of the collateral, we conclude that
Scott failed to conclusively prove that there was “payment” on the note by
virtue of the October 31 transaction.[4]  Guttierrez,
852 S.W.2d at 605; Gillman, 601 S.W.2d at 515; see also O’Connor v.
Miller, 127 S.W.3d 249, 258 (Tex. App.—Waco 2003, pet. denied) (factfinder
is entitled to consider the circumstantial evidence, weigh witnesses'
credibility, and make reasonable inferences from the evidence it chooses to
believe).   We overrule issue one.




ISSUE TWO:  Whether the
“reversal” of the transaction, without notice

to Scott, had the legal
effect of reinstating Scott’s liability on the note.

The Bank points out that this issue is
predicated on our sustaining Scott’s first issue, because if there was no
“payment” there was no need to reinstate liability.  We agree and overrule
Scott’s second issue.

ISSUE THREE:  Whether the Bank can contend for the
first time after the

court’s judgment and findings that the court found
that the debit was

a “mistake,” not having pled mistake, offered
evidence of a mistake, or

obtained an express finding of mistake.

Scott says the court did not find
“mistake” in making the transaction.  The Bank says  1) it was not required to
plead mistake, as that is an evidentiary issue concerning whether there was
liability on the note, 2) there is no evidence that the transaction was a mistake,
and 3) there was no finding of mistake because none was necessary.  We agree. 
The Bank does not rely on mistake; rather, it says that it properly reversed a
transaction that was not intended to pay the note.  We have found that the
court’s finding of no payment was authorized by the evidence.  We overrule
issue three.




ISSUE FOUR: Whether the court erred in failing to make
Scott’s requested findings, based on undisputed evidence, that the note
was paid on October 31, 2000, by the transfer of funds from Inoquest and that
the application of Inoquest’s funds to the note was not the result of a mistake
by the Bank and, based on those findings, erred in failing to conclude as a
matter of law that the note had been paid.

As we indicated earlier, this issue is
another means of attacking the court’s failure to find “payment,” and is a
combination of issues one (conclusive proof of payment) and three (mistake). 
The Bank notes that additional findings of fact and conclusions of law are not
required when the requested findings are contrary to or inconsistent with the
court’s original findings.  We agree.  Thomas v. Cornyn, 71 S.W.3d 473,
485 (Tex. App.—Austin 2002, no pet.).  Furthermore, we have found that the
court’s finding of no payment was authorized by the evidence.  We overrule
issue four.

ISSUE FIVE: When the
undisputed evidence shows that the Bank applied Inoquest’s funds to the full
amount of the note, whether the Bank properly reversed the transaction without
notice to Scott; whether the court could “ignore the evidence” to make findings
of fact concerning non-payment of the debt and the Bank’s not having agreed to
discharge Scott from the debt or any obligation related to it; whether the
court properly concluded that there had been no payment of the note.

Again, as the Bank points out, this
issue is another means to assert that the court should have found that there
was “payment.”  Because we have found that the court’s finding of no payment
was authorized by the evidence, we overrule issue five.

ISSUE SIX: Whether the
court erred in failing to amend its findings and conclusions, as Scott
requested, to reflect the undisputed evidence of payment.

This issue is an alternate means of
questioning the court’s finding of no payment.  As noted above, additional
findings of fact and conclusions of law are not required when the requested
findings are contrary to or inconsistent with the court’s original findings.  Id.  We overrule issue six.

CONCLUSION

Having overruled Scott’s six issues,
we affirm the judgment of the trial court.  Because Scott appealed to this
court, the Bank is entitled to the $3,000 in additional attorney’s fees awarded
by the trial court in the event of an appeal.  The judgment expressly denied
Scott’s counterclaim, and he has not brought an issue on appeal concerning that
ruling.

 

 

BILL VANCE

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed November 8, 2006

[CV06]

 









[1] Our original opinion described the note as being for
$25,000.  The security agreement Scott signed describes it as such, and an
exhibit refers to a $25,000 loan and a $250 “loan fee,” which was apparently
included in the note.





[2] And additional attorney’s fees in the event Scott
appealed to this court and the supreme court.





    [3]           The
record also contains a copy of a deposit slip showing a credit to Inoquest’s
account on November 6 in the amount of $26,267.10 stating “reversal of pay-off
on loan # 92503 per [Garcia].”  The exhibit also shows that interest on the
note was paid on November 6.





    [4]           Scott
directs us to Lawyers Surety Corp. v. Riverbend Bank, 966 S.W.2d 182
(Tex. App.—Fort Worth 1998, no pet.), and Gramercy Insurance Co. v. MRD
Investments, Inc., 47 S.W.3d 721 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied), where the discussions involved “payment” of bank drafts in the context
of recovery on a surety bond.  We do not find the references persuasive in this
context.  Nor do we find the cited provisions of the Texas Business and
Commerce Code relevant to the question of intent.