AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

Ed DEWITT and Sarah DeWitt,
Defendants–Appellees.

No. 05CA2687.

Colorado Court of Appeals,
Div. II.

Feb. 21, 2008.

Rehearing Denied March 20, 2008.

Certiorari Granted Nov. 10, 2008.

Law Office of Roger Moore, Roger Moore, Tony K. Alexander, Denver, Colorado, for Plaintiff–Appellant.

Patterson Nuss & Seymour P.C., Craig S. Nuss, William P. Boyle, Greenwood Village, Colorado, for Defendants–Appellees.

Opinion by Judge BERNARD.

In this subrogation case, plaintiff, American Family Mutual Insurance Company, appeals the judgment entered on a jury verdict in which it was awarded only $16,000 on a claim against defendants, Ed and Sarah DeWitt. At trial, American Family sought reimbursement of the $100,000 policy limits it paid its insured, Jeffrey Henderson, following a mandatory arbitration decision awarding Henderson $200,000. We affirm.

## I. Background

The following facts are undisputed. This case arises out of an automobile accident on I–70 between Sarah DeWitt and Henderson, in which Sarah DeWitt was driving a vehicle owned by her father, Ed DeWitt. DeWitt struck Henderson's car, causing it to hit the guardrail and roll over. Henderson sustained injuries and was taken to the hospital.

Henderson was insured by American Family under a policy providing a $100,000 limit for underinsured motorist (UIM) coverage. The DeWitt vehicle was insured by Mid–Century Insurance, with a policy including liability limits of $25,000.

Mid–Century offered Henderson $25,000, representing Sarah DeWitt's policy limits. American Family refused to authorize the tender and instead chose to advance Henderson $25,000 (the value of the Mid–Century policy) in order to avoid releasing the DeWitts from liability.

Because Henderson's losses were believed to be greater than $25,000, he made a UIM claim against American Family. The UIM claim was arbitrated and resulted in a finding that Henderson's noneconomic losses were $200,000. American Family consequently paid Henderson $75,000 (the balance of his $100,000 policy limits).

Prior to the arbitration hearing, American Family initiated this subrogation action against the DeWitts in the District Court for Jefferson County seeking to recover the $25,000 it advanced Henderson to avoid releasing the DeWitts. After the arbitration decision, American Family amended its complaint to recover the additional amounts it paid Henderson pursuant to the arbitration award.

The parties subsequently filed their trial management order, in which the DeWitts withdrew their denial of negligence in the accident. American Family then moved to strike the DeWitts' jury demand on the ground that the action to recover funds it paid its insured was purely equitable. American Family requested that the trial court, sitting in equity, determine the issues of restitution, reimbursement, unjust enrichment, and the family car doctrine. The trial court denied the motion.

American Family filed a motion to reconsider the denial of its motion to strike the DeWitts' demand for a jury. The court denied reconsideration and held that the De-

Witts were entitled to a jury trial to determine the issue of damages.

At trial, the DeWitts called a certified public accountant (CPA) who testified about Henderson's business and financial interests after the accident. American Family objected to this expert testimony on grounds of relevance, and that any probative value of this testimony was substantially outweighed by the risk of prejudice.

The DeWitts also called the attorney for American Family at the arbitration hearing (former counsel). Former counsel testified that she asked the arbitrator to award Henderson $7,500, which is the amount she thought a jury would award Henderson in a civil trial. American Family objected to this testimony on grounds of relevance.

The jury returned a verdict in favor of American Family. The jury found Henderson incurred injuries in the amount of $16,000, and found that Sarah DeWitt's negligence caused those injuries. The jury further found Ed DeWitt vicariously liable for Sarah DeWitt's negligence under the family car doctrine.

## II. Motion to Strike Jury Trial

American Family contends the trial court erred by denying its motion to strike the DeWitts' jury demand. American Family argues that no questions of fact existed at the time of trial and the action was purely equitable, thus rendering a jury trial improper. We disagree.

■ We review questions of whether a party is entitled to a jury trial in a civil action de novo. *Springer v. City & County of Denver*, 13 P.3d 794, 798 (Colo.2000).

### A. Thrust of the Action

■ The right to a trial by jury in civil actions exists only in proceedings that are legal in nature. *Zick v. Krob*, 872 P.2d 1290, 1293 (Colo.App.1993). If the complaint joins or commingles legal and equitable claims, the court must determine whether the basic thrust of the action is equitable or legal. *Id.* Here, American Family's original complaint combined both equitable (subrogation) and legal (personal injury) claims.

■ Subrogation implies the restoration of the amount paid by a surety (here, American Family), and restoration of that amount only. *United Security Ins. Co. v. Sciarrota*, 885 P.2d 273, 277 (Colo.App.1994). Subrogation is a "creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." *Id.* In its original and amended complaints American Family claimed its right of subrogation and sought restoration of the $100,000 it paid Henderson in its capacity as subrogee.

■ Actions to recover money damages for personal injuries are legal in nature. *Gleason v. Guzman*, 623 P.2d 378, 382 (Colo. 1981). In its original complaint and amended complaint, American Family sought monetary damages from the DeWitts for personal injuries incurred by Henderson.

■ Because the original complaint commingled equitable and legal claims, we must determine whether the basic thrust of the action is equitable or legal. *Zick*, 872 P.2d at 1293. The complaint sought damages for injuries to person or property. While American Family sought relief as a subrogee in its complaint, the thrust of the action was not whether American Family should be reimbursed under the doctrine of equitable subrogation. Rather, it demanded the DeWitts reimburse American Family based on Sarah DeWitt's negligence and the family car doctrine. Accordingly, we conclude that the basic thrust of the complaint was legal in nature.

### B. Issues of Fact

C.R.C.P. 38(a) provides that "[u]pon . . . demand . . . all issues of fact shall be tried by a jury." Here, American Family's complaint alleged issues of fact. The complaint set forth two claims for monetary relief, the first based on negligence and the second based on the family car doctrine. The family car doctrine claim involved questions of fact.

■ The family car doctrine imputes liability to the head of a household when he or

she has control over the vehicle and the vehicle is used by a person who is a member of the household. *Hasegawa v. Day*, 684 P.2d 936, 938 (Colo.App.1983), *overruled in part on other grounds by Casebolt v. Cowan*, 829 P.2d 352 (Colo.1992). Whether one may be considered the resident of a household is an issue to be determined by the facts and circumstances of each case. *United Services Automobile Ass'n v. Mione*, 34 Colo.App. 448, 451, 528 P.2d 420, 421 (1974). The depositions of Ed·and Sarah DeWitt regarding her residence at the time of the accident show inconsistencies, and therefore, issues of fact related to the family car doctrine existed at the time of trial.

Thus, we conclude that the DeWitts had the right to a jury trial, and the trial court did not commit reversible error by refusing to strike the DeWitts' jury demand.

### III. CPA's Testimony

American Family contends the trial court abused its discretion in allowing the CPA to testify regarding the accident's impact on Henderson's business and financial interests. American Family argues that because it was only seeking to recover noneconomic losses for Henderson's injury, this testimony violated CRE 403 because the risk of prejudice associated with its admission substantially outweighed its probative value. Alternatively, American Family argues the testimony was improper impeachment. We disagree.

■ A reviewing court may not reverse a trial court's decision to admit or exclude evidence absent a showing that the trial court abused its discretion. *Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003). When reviewing a trial court's admission of evidence in light of the CRE 403 balancing test, an appellate court must assign to the evidence the maximum probative value and the minimum unfair prejudice which a reasonable fact finder might attribute thereto. *City of Englewood v. Denver Waste Transfer, L.L.C.*, 55 P.3d 191, 200 (Colo.App.2002). To overcome this presumption in favor of the trial court's ruling admitting evidence, the appellant must demonstrate that the decision was "manifestly arbitrary, unreasonable, or unfair." *Wark*, 68 P.3d at 578.

#### A. CRE 403 Probative Value vs. Prejudicial Effect

Pursuant to CRE 403, relevant evidence may be excluded at trial if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Here, the CPA's testimony regarding the finances of Henderson's business was relevant to the impact of Henderson's injuries. The extent of Henderson's injuries was central to the jury's determination of the amount of damages to award.

■ American Family suggests the testimony improperly influenced the jury's decision by signaling that Henderson was wealthy in contrast to the DeWitts, which compelled the jurors to feel sympathy for the DeWitts. However, the DeWitts' finances were never raised at trial, and American Family offers no record support for its argument that the jury was likely to be biased based on feelings of compassion for the DeWitts' financial status.

Further, any such potential for prejudice does not substantially outweigh the probative value of the CPA's testimony regarding the severity of damages Henderson suffered. American Family presented evidence that Henderson's injuries caused him a loss of professional motivation and a decrease in net worth. Thus, the CPA's testimony establishing that Henderson's business had increased profits after the accident was probative as to the effects and severity of his injuries.

#### B. Impeachment Evidence

American Family argues the CPA's testimony was improper impeachment because it raised a collateral issue. We disagree.

■ Impeachment evidence must be relevant and should not raise collateral issues. *Mariani v. Rocky Mountain Hosp. & Medical Service*, 902 P.2d 429, 436 (Colo. App.1994), aff'd, 916 P.2d 519 (Colo.1996). A matter is considered collateral when it has no independent significance to the case and thus would not be independently provable regard-

less of the impeachment. *Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo.1986).

■ The CPA's testimony impeached Henderson's testimony that his net worth had plummeted and that his professional productivity had suffered as a result of the accident. Thus, the CPA's testimony was material, relevant to Henderson's credibility, and was not collateral.

Accordingly, the trial court did not abuse its discretion by allowing the CPA to testify regarding the accident's impact on Henderson's business and financial interests.

### C. C.A.R. 10(c) Stipulation

American Family argues the stipulation of the parties regarding the trial proceedings is controlling and this court should thus find the admission of the CPA's testimony to have been an abuse of discretion. We are not persuaded.

Some evidentiary bench conferences were not recorded during trial, and the parties stipulated to their contents, filing a joint statement (the stipulation) under C.A.R. 10(c) (statement of evidence when transcript is unavailable for purposes of completing the record). The stipulation reiterates the parties' positions with respect to the CPA's testimony regarding Henderson's financial interests.

Paragraph two states American Family's position that it was not seeking to recover economic losses and that the CPA's testimony was therefore irrelevant, its prejudicial effect outweighed its probative value, and it was improper impeachment. Although the stipulation establishes that American Family objected on these grounds at trial, it does not establish the DeWitts agreed with American Family's position.

Thus, the stipulation merely serves to preserve American Family's objection to the CPA's testimony and is consistent with both parties' positions on appeal. Accordingly, our analysis remains the same.

### IV. Former Counsel's Testimony

■ American Family contends the trial court abused its discretion in permitting its former counsel to testify regarding American Family's position in the arbitration proceedings with Henderson. American Family argues it was unfairly prejudiced by the admission of former counsel's testimony. We conclude American Family failed to preserve a CRE 403 objection at trial.

To preserve an objection to admission of evidence at trial, a timely objection must appear on the trial court record, stating a specific ground for objecting. *See* CRE 103(a)(1) (an "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless ... a timely objection or motion to strike appears of record, stating the specific ground of objection"). Requiring a specific objection fulfills two important goals: judges can rule upon the objection in an informed and intelligent way; and opposing counsel can propose alternatives that address the concerns raised by the objection. *Hart v. Schwab,* 990 P.2d 1131, 1135 (Colo.App. 1999).

Here, American Family objected to former counsel's testimony during a bench conference, stating it did not understand "what relevant evidence" former counsel could present, and "her testimony is irrelevant to any of the issues of this case." The trial court asked the DeWitts for an offer of proof in order to determine whether the evidence was relevant and how it could "help the jury make a decision one way or the other."

American Family then stated that former counsel would provide expert testimony that she was not qualified to give, citing reasons why she lacked such qualifications. American Family contended her opinion would invade the jury's province. American Family did not mention CRE 403, employ the words "prejudice" or "prejudicial," or ask the trial court to conduct a balancing test to determine whether the evidence, even if relevant, should be admitted because it could have an adverse effect on American Family's case.

American Family argues its objection to the relevance of former counsel's testimony logically implicated a CRE 403 objection based on the testimony's potential for prejudice. We are not persuaded.

We have found no published decision in Colorado, and the parties did not cite any, specifically discussing whether an objection under CRE 401 raises the issues presented by CRE 403. When seeking guidance on how to apply our rules of evidence, we can look to civil or criminal cases, unless the language or context of the rule indicates otherwise. *See Munson v. Boettcher & Co.*, 832 P.2d 967, 970 (Colo.App.1991)(CRE 404(b) can be used in both civil and criminal cases), *aff'd*, 854 P.2d 199 (Colo.1993); *Gambrell v. Ravin*, 764 P.2d 362, 364 (Colo.App. 1988) ("no reason" not to use CRE 606(b) and a criminal case interpreting it in a civil case), *aff'd*, 788 P.2d 817 (Colo.1990).

A substantial majority of courts has held that an objection to the relevance of evidence does not raise an objection to the admission of evidence because it is unfairly prejudicial. *See, e.g., United States v. Parker*, 364 F.3d 934, 943 n. 2 (8th Cir.2004); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 (10th Cir.2000); *Failla v. City of Passaic*, 146 F.3d 149, 159–60 (3d Cir.1998); *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 516 (1st Cir.1996); *Cook v. Spencer*, 688 F.2d 1017 (5th Cir.1982); *State v. Montano*, 204 Ariz. 413, 425–26, 65 P.3d 61, 73–74, *supplemented*, 206 Ariz. 296, 77 P.3d 1246 (2003); *People v. Kirkpatrick*, 7 Cal.4th 988, 1014–15, 30 Cal.Rptr.2d 818, 874 P.2d 248, 263 (1994); *Jeffries v. State*, 113 Md.App. 322, 341–42, 688 A.2d 16, 25–26 (1997); *Gourley v. Nebraska Methodist Health System, Inc.*, 265 Neb. 918, 935–36, 663 N.W.2d 43, 63–64 (2003); *People v. Barrows*, 251 A.D.2d 711, 712, 674 N.Y.S.2d 153, 154 (N.Y.App.Div. 1998); *Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or.App. 371, 388, 879 P.2d 1288, 1300 (1994); *Cotton v. Kronenberg*, 111 Wash.App. 258, 273, 44 P.3d 878, 886 (2002).

Courts from one federal circuit and two states have indicated that an objection to the relevancy of evidence includes an objection that the evidence is unduly prejudicial. *See United States v. Afjehei*, 869 F.2d 670, 673 (2d Cir.1989)("close relationship" between objections based on relevance and prejudice); *Jackson v. State*, 712 N.E.2d 986, 988 n. 2 (Ind.1999)(Rule 401 relevancy objection preserves prejudice objection under Rule 403);

*State v. Sallis*, 574 N.W.2d 15, 16–17 (Iowa 1998)(objection on relevancy grounds preserved objection to probative value of evidence, which allowed an analysis of the prejudicial impact of its admission).

The commentators side with the majority. *See* 1 Kenneth S. Broun, *McCormick on Evidence* § 52, at 261 (6th ed.2006) (relevancy objections do not explicitly raise the concerns listed in Fed.R.Evid. 403; "[t]he judge should demand the opponent [of the evidence] cite Rule 403 or identify probative dangers mentioned in Rule 403"); Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 403.02[1][b], at 403–10.2 to –10.3 (2d ed. 2007) ("[A]ny error under rule 403 is waived for all purposes except for plain error unless the proper objection is made at trial.").

We conclude, for three reasons, that an objection to the relevance of evidence does not include an objection that the evidence is unduly prejudicial. First, the great weight of authority from jurisdictions that have considered this specific issue reach the same conclusion.

Second, our conclusion is consistent with analogous decisions rendered by federal courts, the supreme court, and other divisions of this court analyzing objections other than relevancy. *United States v. Boney*, 977 F.2d 624, 631 (D.C.Cir.1992)(objection under Fed.R.Evid. 702 did not preserve objection under Fed.R.Evid. 403); *United States v. Barbee*, 968 F.2d 1026, 1031 (10th Cir.1992) (defendant waives appeal based on prejudicial effect of evidence where objection at trial is solely based on foundation); *United States v. Gomez–Norena*, 908 F.2d 497, 499–500 (9th Cir.1990) (hearsay and improper character evidence objections do not preserve Fed. R.Evid. 403 argument for review); *People v. Vigil*, 127 P.3d 916, 929 n. 9 (Colo.2006)(hearsay objection does not raise Confrontation Clause objection); *People v. Kruse*, 839 P.2d 1, 3 n. 7 (Colo.1992)(under the Federal Rules of Evidence, "a specific objection is waived on appeal if not raised at trial"); *People v. Watson*, 668 P.2d 965, 966–67 (Colo.App.1983)(defendant waives CRE 403 objection by objecting to hearsay rather than prejudicial effect of evidence); *People v.*

*Shearer,* 650 P.2d 1293, 1296 (Colo.App.1982) (review based on prejudicial effect of evidence is impermissible where defendant objected at trial solely on basis that instruction was already encompassed in other instructions).

Third, the text of the rules involved clearly indicates that a relevancy objection does not logically include an objection that potentially relevant evidence is prejudicial. CRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence ... more probable or less probable than it would be without the evidence." CRE 402 states a general rule that relevant evidence is admissible, but irrelevant evidence is not. A trial court's focus when resolving an objection under CRE 401 and CRE 402 is upon the logical relationship between the offered evidence and the fact of consequence.

CRE 403 comes into play only if evidence is relevant. Relevant evidence may be excluded under that rule if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The focus of a court's analysis under CRE 403 is upon factors fundamentally different from the logical relationship between the offered evidence and the fact of consequence. An objection under CRE 403 assumes this logical relationship exists, but argues that the evidence, for reasons stated in the rule, will have an impact on the proceedings that will be unfair to the party making the objection. Because of the substantial difference in the analysis trial courts perform under CRE 401 and 403, we conclude that an objection to relevance does not include an objection that the evidence, if admissible, is unduly prejudicial under CRE 403.

Here, American Family's objections to former counsel's testimony relied on three grounds: (1) relevance; (2) questions about former counsel's qualifications as an expert; and (3) a claim that former counsel's opinion would invade the province of the jury. The first ground would be resolved under CRE

401. The trial court would employ CRE 702 to decide the second ground.

Turning to the third ground, American Family did not elaborate on its objection, such as explaining why former counsel's testimony would address an issue reserved for the jury. *See People v. Higa,* 735 P.2d 203, 205 (Colo.App.1987)(expert testimony whether a witness was telling the truth on a prior occasion invades the jury's province with respect to its role in determining credibility). Thus, in light of this general objection, the third ground would be decided under CRE 702 and 704. *See United States v. Downing,* 753 F.2d 1224, 1229 (3d Cir. 1985)(Fed.R.Evid. 702 "invests trial courts with broad discretion to admit expert testimony over the objection that it would improperly invade the province of the jury"); *Haney v. Mizell Memorial Hospital,* 744 F.2d 1467, 1473–74 (11th Cir. 1984)(Fed.R.Evid. 704 abolished the rule prohibiting experts from expressing opinions on the ultimate issue in a case, which allegedly invaded the jury's province).

Here, because American Family's objection did not supply specific grounds under CRE 403, the trial court was not made aware of the nature of the error, nor was opposing counsel given an opportunity to take corrective action. *See Hart,* 990 P.2d at 1135.

 A party is not required to use "magic words" in order to preserve an objection for appeal. *Paul v. People,* 105 P.3d 628, 633 (Colo.2005) ("No talismanic incantation of the words, 'I object,' is required by the statute to avoid a waiver; it is enough that the defense contemporaneously make clear ... its lack of consent or acquiescence in the termination order."). However, the objection must be sufficiently particular to call the court's attention to the specific point the objection addresses. *See People v. Melendez,* 102 P.3d 315, 322 (Colo.2004) ("the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it").

Because American Family only objected to the relevance of former counsel's testimony, to former counsel's qualifications as an expert, and to the risk that former counsel's testimony would invade the jury's province,

we conclude it failed to preserve an objection under CRE 403, and we will therefore not consider its arguments that the admission of former counsel's testimony was prejudicial under CRE 403.

The judgment is affirmed.

Judge ROTHENBERG and Justice ROVIRA * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.