COLORADO COURT OF APPEALS                                    2017COA42

Court of Appeals No. 15CA0852
Otero County District Court No. 12CV63
Honorable Mark A. MacDonnell, Judge

Farm Credit of Southern Colorado, ACA; and Farm Credit of Southern
Colorado, FLCA,

Plaintiffs-Appellees,

v.

James C. Mason, a/k/a Jim Mason,

Defendant-Appellant.

ORDERS AND JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FOX
Román and Booras, JJ., concur

Announced April 6, 2017

Snell & Wilmer L.L.P., Scott C. Sandberg, John O'Brien, Denver, Colorado, for
Plaintiffs-Appellees

James M. Croshal, Attorney At Law, James M. Croshal, Pueblo, Colorado;
Mullans Piersel and Reed, PC, Shannon Reed, Pueblo, Colorado, for Defendant-
Appellant

¶ 1    After Farm Credit of Southern Colorado, ACA, and Farm Credit of Southern Colorado, FLCA (collectively, Farm Credit), refused to loan Zachary Mason[1] additional funds for his farming operations, Zachary's father, James C. Mason, took control of crops that constituted collateral for some of Zachary's loans.  Farm Credit sued James, and James filed counterclaims.  The trial court found James liable for converting the collateral and awarded damages.  James appeals the trial court's orders denying his request for a jury trial and admitting evidence of Zachary's loan debt to Farm Credit.  He also appeals the judgment.  We affirm.

I.    Background

¶ 2    Zachary funded his farming operations in Colorado's Arkansas Valley with Farm Credit loans.  By the spring of 2012, Zachary was having difficulty paying his debt to Farm Credit and had planted crops on seven farms for the coming harvest.  Written agreements between Farm Credit and Zachary granted Farm Credit a perfected security interest in Zachary's crops (Crop Collateral) and their

---

[1] Because two persons in this case have the last name "Mason," we refer to them by their first names to avoid confusion.

proceeds. In early March, Farm Credit refused to continue funding Zachary's farming operations.

¶ 3    Without additional loans from Farm Credit, Zachary was unable to cultivate the Crop Collateral. In May, James — who also funded his farming operations by borrowing from Farm Credit for about forty-six years — took over the cultivation of the Crop Collateral. During that time, James also executed documents to transfer Zachary's United States Department of Agriculture benefits to himself and began harvesting and selling the Crop Collateral. James never attempted to transfer the Crop Collateral or its proceeds to Farm Credit.[2] Farm Credit became aware that James had taken control of the Crop Collateral by late spring or early summer. Without James' cultivation, to which Farm Credit "acquiesced," the Crop Collateral would not have been harvested.

¶ 4    On May 21, Farm Credit filed a complaint against Zachary and other parties, but not James. The complaint contained claims for judgment on Zachary's notes, foreclosure of real property collateral, replevin, conversion of insurance proceeds, civil theft of said

---

[2] Farm Credit discovered arrangements that James made to sell a crop (triticale), part of the Crop Collateral, through a third party, and it was able to attach those proceeds.

proceeds, and fraud. At Farm Credit's request, the trial court issued a temporary order to preserve the collateral the complaint described. This preservation order was to be served on "any third party . . . that [Farm Credit] determine[d] may be in possession of or have control over" the property detailed in the complaint. Farm Credit served this order on James.

¶ 5    On August 1, after the parties engaged in unsuccessful settlement negotiations and James closed his accounts with Farm Credit, Zachary filed for bankruptcy, which halted Farm Credit's efforts to recover the collateral. The bankruptcy court later allowed Farm Credit to continue its efforts to replevy personal property collateral and foreclose real property collateral. On November 13, as part of a bankruptcy adversary proceeding, Farm Credit filed an amended complaint alleging that Zachary transferred the Crop Collateral to James and asserting claims for relief under 11 U.S.C. § 523 (2012).

¶ 6    On March 13, 2013, Farm Credit amended the state trial court complaint to add James as a defendant and include claims for replevin and conversion against James, accounting by James, foreclosure, and appointment of a receiver.

¶ 7     James' answer raised the affirmative defenses of waiver, estoppel, abandonment, and consent, and requested a jury trial. Farm Credit filed a motion to strike James' demand for a jury trial, which the trial court granted, finding that the "basic thrust of this action is equitable."

¶ 8     In November 2013, in response to James' interrogatories, Farm Credit disclosed the amount of Zachary's outstanding debt owed to Farm Credit as of June 2013. The response indicated that the debt, including principal and unpaid interest through June 2013, exceeded $7,000,000, and it provided the interest rates that continued to compound daily. Even though discovery in the underlying action, bankruptcy proceedings and settlement negotiations involving other defendants, and Farm Credit's replevin and foreclosure efforts were simultaneously ongoing, Farm Credit never supplemented its response or updated the disclosed amount of Zachary's outstanding debt.

¶ 9     Discovery disputes, including the one regarding Farm Credit's disclosures of Zachary's outstanding debt, were addressed by a court-appointed special master during a mediation in March 2014. The record does not indicate that the special master issued written

4

findings or a written order, and the transcript does not reflect the entire proceeding. After the 2014 mediation, Farm Credit never disclosed an updated calculation of Zachary's debt, to which James did not object until the middle of trial.

¶ 10 Farm Credit's suit against James went to trial in December 2014. On December 31, 2014 — after the evidence had been presented but before the trial court issued a judgment — the bankruptcy court issued its ruling in the adversary proceeding against Zachary.[3] James promptly filed a motion for a directed verdict based upon the bankruptcy court's findings. The trial court denied this motion, concluding that there was "no identity of the issues actually litigated and necessarily adjudicated" in the bankruptcy adversary proceedings and in the trial court proceedings.

¶ 11 The trial court subsequently entered a judgment against James, finding him liable for converting the Crop Collateral and awarding Farm Credit $251,435 plus 8% interest accruing from

---

[3] The bankruptcy adversary proceeding went to trial in November of 2014, while the proceedings against James in the trial court were ongoing.

November 1, 2012, through April 6, 2015, the date of the judgment.[4]

## II.    Request for a Jury Trial

¶ 12    James argues that the trial court erred in striking his demand for a jury trial.  James asserts that, when deciding whether he was entitled to a jury trial under C.R.C.P. 38(a), the court should have considered only the claims against James, not the equitable claims against other parties.  We disagree.

### A.    Preservation, Standard of Review, and Applicable Law

¶ 13    The parties agree that James has preserved this issue.

¶ 14    We review de novo a party's asserted right to a jury trial in a civil case.  *Stuart v. N. Shore Water & Sanitation Dist.*, 211 P.3d 59, 61 (Colo. App. 2009).

¶ 15    "The right to a trial by jury in civil actions exists only in proceedings that are legal in nature."  *Id.*; *see also* C.R.C.P. 38(a).  Courts look to the "nature of the relief" sought to determine whether a party is entitled to a jury trial.  *Stuart*, 211 P.3d at 61 (citation

---

[4] Farm Credit's expert valued the Crop Collateral at over $495,000 at harvest — when the alleged conversion occurred.  After deducting James' estimated expenses to produce the crops, the expert arrived at a damages value of $251,435.

6

omitted).  "Actions for money damages are considered legal, and actions seeking to invoke the coercive powers of the court are considered equitable."  *Id.* at 62.  But, "not all forms of monetary relief need necessarily be characterized as legal relief for purpose of the jury trial requirement."  *Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 865 (Colo. App. 2008) (citation and alteration omitted).  A party is not necessarily entitled to a jury trial, even where a plaintiff seeks to recover money damages.  *People v. Shifrin*, 2014 COA 14, ¶ 17.

¶ 16    The original complaint, not any counterclaims or defenses, fixes the nature of the action.  *See Carder, Inc. v. Cash*, 97 P.3d 174, 187 (Colo. App. 2003) (considering only the original complaint, not the amended complaint, when affirming the denial of a demand for a jury trial).  Where a party seeks legal and equitable remedies, courts "must determine whether the basic thrust of the action is equitable or legal."  *Am. Family Mut. Ins. Co. v. DeWitt*, 216 P.3d 60, 63 (Colo. App. 2008), *aff'd*, 218 P.3d 318 (Colo. 2009).

### B.    Analysis

¶ 17    We agree with the trial court that the basic thrust of the underlying action was equitable.

7

¶ 18    The May 21, 2012, complaint contained claims for judgment on Zachary's notes, foreclosure of real property collateral, replevin of personal property collateral, conversion of insurance proceeds paid after collateral was damaged or destroyed by fire, civil theft of those proceeds, and fraud regarding those proceeds. The complaint evidences that the action involved a debtor in default, and the relief requested mainly concerned judgment on promissory notes and the foreclosure and disposition of collateral. Under these circumstances, Farm Credit's "remedy is in the nature of a foreclosure, an equitable action which is to be tried to the court." *See W. Nat'l Bank of Casper v. ABC Drilling Co.*, 42 Colo. App. 407, 413, 599 P.2d 942, 947 (1979) (The right to a jury trial under C.R.C.P. 38 "is not intended to extend to actions involving the repossession of collateral by a secured party."). That such foreclosure-like proceedings typically involve calculations of debt and "a personal monetary award against the debtor founded in contract" does not undercut our conclusion that the basic thrust of the action was equitable. *See First Nat'l Bank of Meeker v. Theos*, 794 P.2d 1055, 1059 (Colo. App. 1990); *see also Shifrin, ¶* 17.

¶ 19    We reject James' contention that the trial court erred in considering the May 21, 2012, complaint's claims because Farm Credit did not name James as a defendant until it filed the March 13, 2013, amended complaint.  While a party may invoke its right to a jury trial in a civil action where all other parties have waived this right, a party may only assert a demand for a jury trial in actions where it is entitled to one; if no right to a jury trial exists because the basic thrust of the action is equitable, as it is here, no party may invoke that right.  *See In re Trust of Malone*, 658 P.2d 284, 286 (Colo. App. 1982); *see also Simpson v. Digiallonardo*, 29 Colo. App. 556, 488 P.2d 208 (1971).

¶ 20    Accordingly, we conclude that the basic thrust of the underlying action was equitable and that the trial court did not err in striking James' demand for a jury trial.  *See Stuart*, 211 P.3d at 61; *see also DeWitt*, 216 P.3d at 63.

### III.    Evidence of Zachary's Debt to Farm Credit

¶ 21    James asserts that the trial court erred in admitting evidence of Zachary's debt because Farm Credit did not disclose it before trial, and this nondisclosure was intentional and material.  We are not persuaded.

9

## A. Relevant Facts

¶ 22    During direct examination, Farm Credit asked its chief credit officer if he was "familiar with the remaining amounts owing on" Zachary's debt.  Before the officer answered, James objected on the grounds that (1) Farm Credit never disclosed this information in discovery; (2) the November 2013 interrogatory response had never been updated; and (3) when James asked Farm Credit for this information, it was never provided.  James emphasized that, as of the date of trial, if Farm Credit was "owed nothing, they get nothing" in damages.

¶ 23    The trial court asked Farm Credit if the answer to the question today was "going to be materially different" than the November 2013 interrogatory response.  Farm Credit replied that it did not believe so.  Ultimately, the court ruled that it would allow the officer to answer the question.  But, if "the answer . . . is materially different and the Court determines that it should have been updated as part of the discovery process, the Court will strike the answer."

¶ 24    The officer then testified that Zachary's outstanding debt totaled "[a]proximately four million" dollars.  James renewed his

10

objection, and the trial court ruled that it would allow James to provide the court with the November 2013 interrogatory response.

¶ 25 The next day, James repeated his objection while moving to dismiss "all of the claims for conversion and replevin" because of Farm Credit's alleged discovery violation of failing to disclose an updated total for Zachary's debt.

¶ 26 Farm Credit responded that it was seeking from James damages equivalent to the value of the Crop Collateral at the time of conversion — not the full value of the debt Zachary owed it. Thus, with Zachary's debt exceeding $7,000,000 in June 2013 (and interest accruing daily to date), no amount of security interest proceeds would decrease the debt balance below $495,000 (Farm Credit's approximated value of the Crop Collateral when converted).

¶ 27 After noting that there was no complete transcript or written order from the mediation, the trial court found that the amounts of debt detailed in the November 2013 interrogatory response and the chief credit officer's trial testimony "far exceed[] the amount that's at issue in this litigation." Accordingly, the trial court declined to dismiss the action for discovery violations.

## B.    Preservation, Standard of Review, and Applicable Law

¶ 28    The parties agree that James has preserved this issue.

¶ 29    Because James' arguments in the trial court concerned the exclusion of evidence or the dismissal of the action as sanctions for discovery violations, we understand James' contention to be grounded in C.R.C.P. 37(c).[5] We review a trial court's decision whether to impose sanctions under C.R.C.P. 37 for an abuse of discretion. *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009). An abuse of discretion occurs when a trial court's ruling is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *People v. Relaford*, 2016 COA 99, ¶ 25. Additionally, we may affirm on any grounds supported by the record. *Makeen v. Hailey*, 2015 COA 181, ¶ 21.

---

[5] Although the record demonstrates that James requested the amount of Zachary's debt in an interrogatory and updated totals of the outstanding debt after June 2013, the record does not indicate that James made any related motions to compel or for sanctions for failure to comply with a court order, pursuant to C.R.C.P. 37(a) and (b) respectively. *See* C.R.C.P. 37(a)(2)(B) (if a deponent fails to answer a question noticed in a C.R.C.P. 30(b)(6) deposition, the party seeking discovery may move for an order compelling an answer); C.R.C.P. 37(a)(4) (authorizing sanctions if the discovering party's motion is granted or if the requested discovery is provided after the motion was filed).

¶ 30　　C.R.C.P. 37(c) addresses potentially excluding nondisclosed evidence unless the failure to disclose is justified or harmless to the other party. Although a prior motion is not required to impose sanctions, the burden is on the nondisclosing party to establish that its nondisclosure was substantially justified or harmless. *Miller v. Rowtech, LLC*, 3 P.3d 492, 496 (Colo. App. 2000).

¶ 31　　When evaluating whether a failure to disclose is harmless under C.R.C.P. 37(c), the inquiry is whether the failure to disclose will prejudice the opposing party by denying him an adequate opportunity to defend against that evidence. *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 979 (Colo. 1999). In this determination, courts consider various factors, including:

> (1) the importance of the witness's testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice or surprise to the party against whom the testimony is offered that would arise from allowing the testimony; (4) the availability of a continuance to cure such prejudice; (5) the extent to which introducing such testimony would disrupt the trial; and (6) the non-disclosing party's bad faith or willfulness.

*Id.* at 978.

¶ 32    Generally, sanctions under C.R.C.P. 37 "should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party." *Pinkstaff*, 211 P.3d at 702 (citation omitted). "[T]he trial judge must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case." *Id.* (quoting *Nagy v. Dist. Court*, 762 P.2d 158, 161 (Colo. 1988)). The sanction selected should be the least severe one that will ensure full compliance with a court's discovery orders and be commensurate with the prejudice caused to the opposing party. *Id.* Because "[t]he harshest of all sanctions is dismissal or entry of a default judgment," such sanctions "should be imposed only in extreme circumstances." *Nagy*, 762 P.2d at 161.

## C.    Analysis

¶ 33    Even if C.R.C.P. 26 required Farm Credit to disclose the current amount of Zachary's debt through the trial date, the record supports a conclusion that this nondisclosure was harmless.

¶ 34    The trial court considered the parties' contentions and the information available to James regarding Zachary's debt. The trial court found no material difference between the interrogatory

14

response and the chief credit officer's testimony because both indicated an amount of debt that "far exceed[ed]" the most optimistic estimate given for the Crop Collateral's value at the time of conversion. This supports the conclusion that the nondisclosure did not deny James an adequate opportunity to defend against Farm Credit's assertion that the outstanding debt exceeded the value of the subject collateral. *See Todd,* 980 P.2d at 979.

¶ 35 Additionally, the record shows that this evidence constituted a brief answer to a single question from a witness whom James had deposed multiple times. Although the trial court condemned Farm Credit's behavior in discovery generally and issued sanctions for other disputes, it made no findings as to whether Farm Credit acted in bad faith in this particular discovery dispute and, in any event, this factor is undercut by the considerations noted above. *See id.* at 978; *see also Nagy,* 762 P.2d at 161; *Makeen,* ¶ 21.

¶ 36 The trial court's refusal to dismiss the action as a result of Farm Credit's harmless nondisclosure was not manifestly arbitrary, unreasonable, or unfair, and it did not misapply the law. *See Relaford,* ¶ 25. Therefore, the trial court did not abuse its discretion. *See id.*

## IV.   The Judgment

¶ 37   James next contends that the trial court reversibly erred in determining that several of his defenses were unavailable; rejecting his argument that the bankruptcy court's decision was dispositive of the legal issues in the state litigation; and determining, when assessing damages, that the date of conversion was the date that James harvested the Crop Collateral.  We disagree.

### A.   Defenses

¶ 38   The trial court erred, according to James, when it determined that the defenses of abandonment, estoppel, waiver, and consent did not relieve him of liability for conversion because the evidence allegedly established that Farm Credit "acquiesced" to James' taking control of the Crop Collateral.  James also argues that the trial court misapplied the law regarding his stated defenses to conversion.  We discern no error.

### 1.   Preservation, Standard of Review, and Applicable Law

¶ 39   James raised the defenses of abandonment, estoppel, waiver, and consent in his answer, during the trial management proceedings, and in his trial brief.  In addition, he presented related

16

evidence at trial, upon which the trial court ruled.[6]  We therefore

conclude that James sufficiently preserved this issue.  *See Berra*

*v. Springer & Steinberg, P.C.,* 251 P.3d 567, 570 (Colo. App. 2010)

("[T]o preserve the issue for appeal all that was needed was that the

issue be brought to the attention of the trial court and that the

court be given an opportunity to rule on it.").

¶ 40     We review a trial court's factual findings for clear error, and its

conclusions of law de novo.  *Former TCHR, LLC v. First Hand Mgmt.*

*LLC*, 2012 COA 129, ¶ 37.  Factual findings are clearly erroneous

"only if there is nothing in the record to support" them.  *Loveland*

*Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1117

(Colo. App. 2010).

¶ 41     Conversion is "any distinct, unauthorized act of dominion or

ownership exercised by one person over personal property belonging

to another."  *Stauffer v. Stegemann,* 165 P.3d 713, 717 (Colo. App.

---

[6] The trial court explicitly rejected James' defenses of consent and waiver.  We conclude that the trial court rejected James' abandonment and estoppel defenses when it found that "Farm Credit promptly obtained [the preservation order] and sought to enforce that Order to prevent the loss of the . . . Crop Collateral[, which] was the best and arguably only measure Farm Credit could take in the short time between Zachary's default and his bankruptcy petition."  *See Berra v. Springer & Steinberg, P.C.,* 251 P.3d 567, 570 (Colo. App. 2010).

17

2006). Where its interest has priority, a secured party may bring a claim for conversion against a party who "wrongfully obtained and sold property in which the secured party has a security interest." *Former TCHR*, ¶ 38.

¶ 42   Credit agreements involving a principal amount in excess of $25,000 are subject to the Credit Agreement Statute of Frauds (the Statute). § 38-10-124, C.R.S. 2016. Under the Statute, "credit agreements" include "[a]ny amendment of, cancellation of, *waiver of*, or substitution of any or all of the terms or provisions of any of the credit agreements." § 38-10-124(1)(a)(II) (emphasis added). No "debtor or creditor may . . . maintain . . . a claim relating to a credit agreement [subject to the Statute] unless the credit agreement is in writing and is signed by the party against whom enforcement is sought." § 38-10-124(2). Importantly, a "credit agreement may not be implied under any circumstances." § 38-10-124(3).

### 2.   Analysis

¶ 43   We agree that the written agreements evidencing Farm Credit's perfected security interest in the Crop Collateral are "credit

agreements" within the meaning of the Statute.[7]  *See*

§ 38-10-124(1)(a)(I); *see also* § 4-9-315(a)(2), C.R.S. 2016 ("A

security interest attaches to any identifiable proceeds of

collateral.").  Thus, any waiver involving Farm Credit's rights to the

Crop Collateral, including proceeds, would need to be in writing in

order to be effective.  *See United States v. Winter Livestock Comm'n,*

924 F.2d 986, 993 (10th Cir. 1991) (noting that the receiver of

collateral bears the risk of "fail[ing] to obtain release" and

concluding that "ignorance" of the security interest "is not a

defense" to conversion of collateral).  The record supports the trial

court's finding that a written waiver "was never made."

¶ 44     Although Farm Credit may have "acquiesced" to James'

cultivating the Crop Collateral to prevent its ruin before harvest, the

record evidences that Farm Credit never effectively waived its rights

to proceeds of the collateral.  That James was not a party to these

agreements and that Farm Credit's conversion claim sounds in tort

---

[7] The collateral detailed in the security agreement between Farm Credit and Zachary included numerous livestock and multiple pieces of farming equipment.  Setting this additional collateral aside, even the conservative $146,000 early estimated value of the Crop Collateral, which James referenced in the trial court, exceeds the Statute's $25,000 threshold.

do not change the fact that James took control of, sold, and retained the proceeds from property in which Farm Credit retained a perfected security interest. *See* § 38-10-124(1)(a)(II); *see also Former TCHR*, ¶ 38 (noting that a security interest generally survives the disposition of collateral). Indeed, the record supports the trial court's finding that, by obtaining the May 2012 preservation order and seeking its enforcement, Farm Credit pursued its "best and arguably only measure" to prevent the loss of the Crop Collateral "in the short time between Zachary's default and his bankruptcy petition." The preservation order was "to prevent the subject property from being transferred, sold, moved, relocated, assigned, conveyed, or otherwise disposed of" and was served on Zachary and James. Accordingly, we conclude that the trial court did not err in rejecting James' waiver defense.

¶ 45     For similar reasons, we conclude that the trial court properly rejected James' consent defense. First, a complete relinquishment of Farm Credit's security interest in the Crop Collateral would need to be in writing. *See* § 38-10-124(2)-(3). Second, the record shows that Farm Credit's actions did not constitute consent to the total disposition of collateral to James and the elimination of its security

interest.[8]  *See* § 4-9-315(a)(1) ("A security interest or agricultural

lien continues in collateral notwithstanding . . . disposition thereof

*unless* the secured party authorized the disposition free of the

security interest or agricultural lien.") (emphasis added).  While the

record shows that Farm Credit acquiesced to James' cultivation and

harvest of the otherwise doomed Crop Collateral, it does not show

that Farm Credit consented to its security interest being completely

extinguished; rather, the record shows that Farm Credit sought to

protect its security interest by seeking the preservation order

shortly after it became aware of James' actions.  Thus, this case is

distinguishable from cases where a creditor consented to the

disposition of collateral and lost its security interest as a result.

*See First Nat'l Bank of Brush v. Bostron*, 39 Colo. App. 107, 110,

564 P.2d 964, 966 (1977) (determining that a creditor lost its

---

[8] Although the trial court incorrectly stated that "acquiescence by a property owner is not a defense to conversion," *see Colo. Bank & Tr. Co. v. W. Slope Invs., Inc.*, 539 P.2d 501, 504 (Colo. App. 1975) (noting that "acquiescence or consent" constitute a defense to the conversion of collateral), we conclude that this statement was merely ancillary to the court's decision that the facts were insufficient to show consent or acquiescence to James' taking possession of the collateral free of Farm Credit's security interest. Moreover, James did not present acquiescence as a defense separate from consent in the trial court or on appeal.

security interest in cattle feed when it "authorized the use of the feed" by a third party who was free to destroy the feed by giving it to cattle).

¶ 46  On this record, the trial court did not err in rejecting James' consent defense.

¶ 47  Next, we discern no error in the trial court's rejection of James' abandonment defense.  The trial court found that, rather than abandoning the Crop Collateral or its security interest, Farm Credit undertook to prevent the loss of the Crop Collateral (or proceeds) by obtaining the May 2012 preservation order, seeking its enforcement, and serving it on Zachary and James.  Even with this notice, James took the risk of continuing to cultivate and harvest the Crop Collateral.

¶ 48  The trial court did not find that Farm Credit manifested intent, or took action, to abandon the Crop Collateral and related claims at any point, including during the bankruptcy adversary proceeding.  The trial court's finding that the Crop Collateral "would have perished" without James' actions did not require it to find that Farm Credit intentionally abandoned that collateral; Farm Credit's failure to harvest does not necessarily mean it intended to abandon

its interest in the proceeds of the Crop Collateral. *See Hoff v. Girdler Corp.*, 104 Colo. 56, 59, 88 P.2d 100, 102 (1939) ("Abandonment consists of two factors, the intention and the act."). Because these findings have record support, we conclude that the trial court did not err in finding that the evidence was insufficient to establish James' abandonment defense. *See Loveland Essential Grp.*, 251 P.3d at 1117; *see also Hoff*, 104 Colo. at 59, 88 P.2d at 102.

¶ 49     Finally, the trial court did not err in rejecting James' estoppel defense. As we have explained, Farm Credit did not consent to the total disposition of the Crop Collateral to James or waive its security interest under the credit agreements; thus, waiver or consent do not provide grounds for an estoppel defense here. *See* 18 Am. Jur. 2d *Conversion* § 111 (2017). While the trial court found that Farm Credit "acquiesced" to James' cultivating the crops, it also found that Farm Credit obtained and sought to enforce the preservation order against James with notice to James before the 2012 harvest. Thus, the trial court properly rejected an

estoppel defense grounded in any benefit James conferred to Farm Credit.[9] *See id.*

B. Bankruptcy Court Decision and Collateral Estoppel

¶ 50 James contends that the trial court erred when it determined that the bankruptcy court's decision did not preclude Farm Credit from recovering on its claims and denied James' motion for a directed verdict. We are not persuaded.

1. Preservation and Standard of Review

¶ 51 The parties agree that James properly preserved this issue.

¶ 52 We review collateral estoppel claims de novo. *See Stanton v. Schultz*, 222 P.3d 303, 307 (Colo. 2010). But, we examine the trial court's factual findings for clear error. *Goluba v. Griffith*, 830 P.2d 1090, 1091 (Colo. App. 1991).

2. Discussion

¶ 53 Collateral estoppel, or issue preclusion, bars relitigating an issue when a court has already decided that issue. *A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 600 (Colo. App. 2004).

¶ 54 Collateral estoppel precludes an issue's relitigation where:

---

[9] The trial court allowed James to recover the estimated expenses incurred to produce and harvest the Crop Collateral.

(1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Stanton*, 222 P.3d at 307. In cases involving the same factual issues, if not the same legal issues, "[t]he doctrine of issue preclusion applies to the relitigation of "factual . . . matters" that a court previously litigated and decided." *Calvert v. Mayberry*, 2016 COA 60, ¶ 15 (citation and alteration omitted).

¶ 55    Here, the legal issues before the bankruptcy court were different from those before the trial court. The bankruptcy court decided Farm Credit's claims objecting to the discharge of Zachary pursuant to 11 U.S.C. § 523 and alleging fraud, embezzlement, and intentional injury to property. The trial court, in contrast, decided Farm Credit's conversion claims against several defendants grounded in state common law tort and in Farm Credit's rights provided by its security agreements. The record supports the trial court's finding that "the focus of the [bankruptcy court's]

conclusions of law remain[ed] on Zachary['s] actions regarding the crops," not James'. The issues litigated in the two proceedings at issue were not "identical." *See Stanton*, 222 P.3d at 307; *see also In re Musgrave*, No. ADV.09-01006, 2011 WL 312883, at *11 (B.A.P. 10th Cir. Feb. 2, 2011) (unpublished opinion) ("Although conversion of property of another can serve as grounds for nondischargeability under § 523(a)(6), not every conversion constitutes a willful and malicious injury within the meaning of § 523(a)(6).") (footnote omitted). Therefore, although the trial court applied the doctrine of collateral estoppel to certain *factual* issues decided by the bankruptcy court, the trial court correctly determined that collateral estoppel did not apply to the *legal* issues before it. The trial court, therefore, properly denied James' motion for a directed verdict. Even if the bankruptcy court loosely used the term "acquiesce" in describing Farm Credit's actions concerning the Crop Collateral, it did not adjudicate the legal effect of the preservation order that Farm Credit sought and enforced. *See Calvert*, ¶ 15.

### C. Damages Assessment

¶ 56    Lastly, James argues that the trial court misapplied the law when assessing damages by determining that the date of conversion

26

was the date of harvest. James asserts that the trial court should have found that the date of conversion occurred no later than the end of the spring of 2012 when James took over the crops' cultivation. We disagree.

### 1. Preservation, Standard of Review, and Applicable Law

¶ 57     James preserved this issue for appeal.

¶ 58     The trial court "has the sole prerogative to assess the amount of damages, and its award will not be set aside unless it is manifestly and clearly erroneous." *Lawry v. Palm*, 192 P.3d 550, 565 (Colo. App. 2008). The trial court also has the discretion to determine the appropriate measure of damages, taking "the goal of reimbursement of the plaintiff for losses actually suffered" as its principal guidance. *Heritage Vill. Owners Ass'n, Inc. v. Golden Heritage Inv'rs, Ltd.*, 89 P.3d 513, 516 (Colo. App. 2004). Whether the trial court misapplied the law when determining the measure of damages presents a question of law which we review de novo. *See Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't*, 196 P.3d 892, 894 (Colo. 2008) (reasoning that a trial court erred as a matter of law when it applied the wrong legal standard); *see also Antero Res. Corp. v. Strudley*, 2015 CO 26, ¶ 14.

¶ 59     "The measure of damages for conversion is generally the value of the converted property at the time and place of the misappropriation plus interest at the legal rate from the time of the conversion until the time of trial." *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984). Conversion is not a continuing tort. *Emp'rs' Fire Ins. Co. v. W. Guar. Fund Servs.*, 924 P.2d 1107, 1111 (Colo. App. 1996).

### 2. Analysis

¶ 60     The trial court found that James began harvesting the Crop Collateral as early as May 2012. According to the court, calculating the value of the Crop Collateral was difficult because James claimed that he kept no records of "his 2012 farming activities" — a claim which the trial court found "lack[ed] credibility." James presented no evidence in the trial court regarding an estimation of his cost, minus Zachary's prior contributions, to cultivate the Crop Collateral.[10] As a result, the trial court had to calculate damages

---

[10] Instead, James seemed to advocate during trial that the court should adopt Farm Credit's preliminary valuation made in April 2012, before the harvest, totaling $146,000, rather than Farm Credit's trial expert's valuation exceeding $495,000. *See Carder, Inc. v. Cash*, 97 P.3d 174, 185 (Colo. App. 2003) ("The trial court, as fact finder, has broad discretion in determining the amount of

based on the expert valuations provided by Farm Credit alone. Under these circumstances, we agree that the proper measure of damages is "the estimated value of the crop at the time of harvest minus the estimated cost to produce the crop." *See Roberts v. Lehl*, 37 Colo. App. 351, 352-55, 149 P. 851, 852 (1915) (applying this measure of damages to a case involving the destruction of crops); *see also* W. W. Allen, Annotation, *Measure of Damages for Injury to or Destruction of Growing Crop*, 175 A.L.R. 159 (originally published in 1948) (noting judicial exceptions regarding the measure of damages for damages involving crops, due to the unique nature of assessing the value of growing crops); 2A Stephen A. Hess, Colorado Practice Series: Methods Of Practice § 81:49 (6th ed. 2016) (same).

¶ 61     Because we conclude that the trial court applied the correct standard in assessing damages, we defer to its factual findings that are supported by the record and discern no error with the damages award. *See Lawry*, 192 P.3d at 565.

---

damages."); *see also Brandt v. MacLellan*, 495 P.2d 250, 251 (Colo. App. 1972) (not published pursuant to C.A.R. 35(f)) (refusing to substitute the reviewing court's judgment for the trial court's where the trial court's findings were supported by some parts of the evidence and conflicted by others).

## V. Conclusion

The orders and judgment are affirmed.

JUDGE ROMÁN and JUDGE BOORAS concur.