22CA1868 Peo v Smith 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1868
City and County of Denver District Court No. 21CR2721
Honorable Jennifer B. Torrington, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alonzo D. Smith,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BERGER*
Lipinsky and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1　　Defendant, Alonzo D. Smith, appeals the judgment of conviction entered after a jury found him guilty of attempt to commit second degree assault (serious bodily injury) and third degree assault, both as acts of domestic violence.

¶ 2　　First, Smith argues that reversal is required because the trial court abused its discretion by allowing a police detective to tell the jury that the victim's inadmissible medical records were consistent with the victim's statements about her injuries.  Second, Smith contends that the trial court erred by admitting the victim's "irrelevant" medical record release form.  Third, Smith claims two instances of prosecutorial misconduct require reversal.  Finally, he argues that if these individual errors don't require reversal, then he must be granted relief under the doctrine of cumulative error.

¶ 3　　We agree that the attempted second degree assault conviction must be reversed based on Smith's first contention regarding the error in admitting the detective's "consistency" testimony, but we affirm the third degree assault conviction.

## I. Facts and Procedural History

### A. The August and November Incidents

¶ 4 Smith and the victim were "boyfriend, girlfriend" for about three years, beginning in 2018. Near the end of their relationship, they had two physical altercations. First, in August 2020, the victim reported that Smith bit her finger, blocked her for "like two seconds" as she was trying to get from her apartment to her car in the garage, and hit her (the August incident).

¶ 5 Second, in November 2020, the victim reported that Smith "tried to choke [her] and throw [her] over the third floor staircase" and also "dislocated [her] arm" (the November incident). After each incident, the victim sought medical treatment and reported the assaults to police.

¶ 6 For the August incident, the prosecution charged Smith with two counts of third degree assault and one count of false imprisonment. For the November incident, the prosecution charged Smith with one count of second degree assault (serious bodily

injury)[1] and one count of third degree assault.  All counts were charged as acts of domestic violence and filed in the same complaint.

### B.  The Discovery Violation and Sanction

¶ 7    Fourteen days before trial and nineteen days after the pretrial conference, the prosecution endorsed a medical doctor as an expert witness.  Defense counsel objected, arguing that the prosecution had been required to disclose the expert no later than the date of the pretrial conference.  Defense counsel requested sanctions for the disclosure violation.  The prosecution responded that the doctor "would be called to testify that he treated the [v]ictim in this case . . . and that [the victim] was suffering from a dislocated shoulder."  The prosecution also said that it "would ask [the doctor] to testify regarding his completion of the [serious bodily injury (SBI)] form."

¶ 8    Initially, the court didn't impose any sanctions, but it set a deadline for the prosecution to provide its expert disclosures to

---

[1] The prosecution charged Smith under section 18-3-203(1)(g), C.R.S. 2025 ("With intent to cause bodily injury to another person, he or she causes serious bodily injury to that person or another.").

defense counsel. When the prosecution failed to meet the deadline, the court precluded the doctor from testifying at trial as a sanction.

¶ 9 Five days before the scheduled trial, the prosecution requested leave to replace the second degree assault charge with a charge of *attempted* second degree assault. The prosecution was forthright in explaining this late amendment. The prosecution told the court that the amendment was "due to the unavailability of the treating physician for testimony in th[e] case." The court allowed the amendment.

C. Substitution of the Doctor's Excluded Expert Testimony

¶ 10 During trial, the prosecution told the court that, because the doctor wasn't allowed to testify, the prosecution planned to offer the entirety of the victim's medical records from the November incident into evidence through a detective under CRE 803(4). The court rejected the proposition that all of the medical records were admissible, but it reserved ruling on whether it would allow the prosecution to admit portions of the victim's medical records.

¶ 11 While Detective Tamara Lenherr was on the witness stand, the court allowed the prosecution to introduce a document that showed the victim gave law enforcement access to her medical records after

the November incident (the medical release form).  Then, after establishing that the detective had obtained the victim's medical records, the prosecution asked the detective, "What injuries did those medical records reflect that the victim suffered?"  Defense counsel objected on multiple grounds, including hearsay.  In overruling the objection, the court ruled that the detective "could testify about her understanding of . . . you know, the diagnosis or the injuries of the diagnosis."

¶ 12     The court then allowed the prosecution to ask Detective Lenherr, "And when you received those medical records back, did, were they consistent with what she [the victim] said?"  The detective answered, "Yes."  Defense counsel again objected, arguing that the detective's testimony "provides an inference" that the inadmissible doctor's opinion "was consistent with what [the victim,] with how [the victim] described her injury."  After again overruling defense counsel's objection, the court allowed the prosecution to ask the detective, "Were the statements in the [victim's] medical records consistent with what she told you about the injury, what the injury was?"  Detective Lenherr responded, "Yes, they were."  Defense

counsel again renewed his hearsay objection, which the court "[n]oted for the record."

### D.    Evidence of the November Incident

¶ 13    Other than the victim's testimony, the only eyewitness testimony the prosecution presented regarding the November incident was that of a neighbor who lived next door to the victim at the time.  The neighbor told the jury that she heard banging and then, through the peephole in her door, saw a man "slam" a woman against a wall.  When the neighbor opened her door, the man was gone.  The neighbor testified that she didn't see the man try to throw the victim over the balcony.

¶ 14    Regarding the victim's injuries immediately after the fight, the neighbor told the jury, "Her shoulder, her arm, she couldn't, she couldn't use it."  The victim testified that, at a hospital emergency room, "[t]hey popped [her] arm back into place and gave [her] a sling."

### E.    The Verdict

¶ 15    The jury acquitted Smith of all three counts related to the August incident (two counts of third degree assault and false imprisonment) but convicted Smith on the two counts related to the

November incident (attempted second degree assault and third degree assault).

## II. Legal Principles

### A. Standard of Review

¶ 16    A trial court enjoys broad latitude to determine the admissibility of evidence. *Davis v. People*, 2013 CO 57, ¶ 13. Accordingly, we give considerable deference to the trial court's determinations and review evidentiary rulings for an abuse of discretion. *Id.* A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *People v. Ray*, 2025 CO 42M, ¶ 19.

¶ 17    We review preserved, nonconstitutional errors for harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. An error is harmless if it doesn't substantially influence the jury's verdict or affect the fairness of the trial proceedings. *Ray*, ¶ 20; *see* Crim. P. 52(a).

### B. Attempted Second Degree Assault

¶ 18    Second degree assault, as applicable here, requires the prosecution to prove that the defendant, with intent to cause bodily injury to another, caused serious bodily injury to another. § 18-3-203(1)(g), C.R.S. 2025. "Serious bodily injury" means

7

> bodily injury that, either at the time of the actual injury or at a later time, involves a substantial risk of death; a substantial risk of serious permanent disfigurement; a substantial risk of protracted loss or impairment of the function of any part or organ of the body; or breaks, fractures, a penetrating knife or penetrating gunshot wound, or burns of the second or third degree.

§ 18-1-901(3)(p), C.R.S. 2025.

¶ 19  Criminal attempt to commit assault in the second degree requires the prosecution to prove that the defendant, with intent to commit the crime of second degree assault, engaged in conduct constituting a "substantial step" toward the commission of second degree assault.  § 18-2-101(1), C.R.S. 2025.  A substantial step is any conduct, whether act, omission, or possession, that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.  *Id.*

### C.  Third Degree Assault

¶ 20  Third degree assault requires the prosecution to prove that the defendant knowingly or recklessly caused bodily injury to another person.  § 18-3-204(1)(a), C.R.S. 2025.  "Bodily injury" means "physical pain, illness, or any impairment of physical or mental condition."  § 18-1-901(3)(c).

8

III. The Detective's Improper Testimony Requires Reversal of the Attempted Second Degree Assault Conviction

¶ 21     As related above, the trial court allowed Detective Lenherr to tell the jury that the victim's statements about her injuries were consistent with the information contained in the victim's inadmissible medical records. Defense counsel objected to this testimony on numerous grounds both before and during the detective's testimony. The grounds on which defense counsel objected included relevance, hearsay, and improper expert testimony. Accordingly, despite the People's argument to the contrary, this contention is preserved.

¶ 22     The People appear to concede — and we agree — that the court erred by allowing this multiple-level hearsay testimony. "'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay is generally inadmissible. CRE 802. At trial, the prosecution's only argument as to the admissibility of this evidence was that the victim's medical records were admissible under CRE 803(4). But, for good reasons, the People don't persist in this argument on appeal.

¶ 23     The medical records contain statements not only by the victim regarding her medical situation and treatment, but also statements by doctors, nurses, and others regarding the victim's treatment, all of which constitute inadmissible hearsay unless they all fall within a recognized hearsay exception.  The trial court correctly recognized that the medical records did not fall within any recognized hearsay exception.[2]  But the detective's "consistency" testimony was tantamount to her statement or opinion of what was contained in the victim's medical records and constituted inadmissible hearsay.[3]  The trial court erred in permitting the detective to so testify.

¶ 24     Having concluded that the court erred by allowing the detective's testimony, we turn to whether the error was harmless. *Ray*, ¶ 20.  To analyze harm, we may consider "factors like evidentiary cross-admissibility, the appropriateness of jury instructions, and whether there is any indication that the jury

---

[2] We note that neither the prosecution at trial nor the People on appeal argue that any of this hearsay was admissible because it consisted of prior consistent statements of the victim.  *See* CRE 801(d)(1)(b).

[3] We need not address whether it also constituted improper expert testimony because the evidence was inadmissible hearsay.

blended the issues in considering their verdict." *Washington v. People*, 2024 CO 26, ¶ 23.

¶ 25 The People argue that the detective's "brief comment" was minimally prejudicial "since overwhelming evidence supported the jury's findings of injury; the victim, the neighbor, and the responding officer all described the victim's injuries and the jury saw multiple photos of the victim's shoulder and neck." But our review of the record leads us to conclude otherwise. We cannot confidently say that there is no reasonable probability that Detective Lenherr's consistency testimony didn't contribute to Smith's conviction for attempted second degree assault. After all, "'a reasonable probability' does not mean that it is 'more likely than not' that the error caused the defendant's conviction." *People v. Casias*, 2012 COA 117, ¶ 63. "Instead, it means only a probability sufficient to undermine confidence in the outcome of the case . . . ." *Id.*

¶ 26 We consider the entire record to determine whether an evidentiary error was harmless. *See Masters v. People*, 58 P.3d 979, 1002-03 (Colo. 2002) ("If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did

not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless." (quoting *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo. 1989))).

¶ 27    In considering the entire record, we first reiterate that the prosecution did not comply with the court's expert disclosure requirements. Accordingly, the court properly precluded the expert from testifying as a sanction for the disclosure violation. And then, in two respects, the prosecutor attempted an end run around the court's disclosure and preclusion orders. First, the prosecutor sought amendment of the longstanding second degree assault charge. It was clear this was *not* an attempt crime; it was an alleged completed crime. Second, even though the prosecution replaced the second degree assault charge with a charge of *attempted* second degree assault, the prosecutor presented evidence of the effects of the *completed* crime. Putting improper evidence before the jury suggesting that the victim *actually* suffered serious bodily injury necessarily made it easier for the jury to find that Smith took a substantial step toward causing serious bodily injury to the victim.

¶ 28     Next, we consider the jury's multiple questions regarding the victim's injuries and medical records.  A juror submitted a question to an officer who took photographs of the victim in the hospital after the November incident: "Any medical records @ time of incident[?]"  Based on objections from both defense counsel and the prosecution, the question was not asked.  In addition, another juror sought to ask the victim, "Any x-ray of arm or official report?"  But again, this question was not asked.  A third juror question was submitted to Detective Lenherr: "If any, what laboratory results were obtained?  See exhibit 12 [the medical release form] submitted by the People."  Again, this question was objected to and not asked.  Further, during deliberations, the jury asked, "Does Charge 1 [attempted second degree assault] refer *only* to attempting to throw the victim over the balcony?"  As to this question, the court responded, "In order to convict the defendant of Criminal Attempt to Commit Assault in the Second Degree [for the November incident,] you must either unanimously agree that the defendant committed the same act or acts, or that he committed all of the acts alleged."  These juror questions reveal that the jury "grapple[d]" with the very evidence the court precluded the prosecution from offering.  *Castillo*

13

*v. People*, 2018 CO 62, ¶ 65 ("And in fact, we know the jury did grapple with the jury instructions regarding exceptions to self-defense because the jury asked a question related to provocation . . . .").

¶ 29    We also reject the People's argument that there was overwhelming evidence of the victim's injuries.  The prosecution was acutely aware of this weakness and was upfront about it when it amended the complaint days before trial after being precluded from calling the doctor to testify about the SBI form.  Though no longer needing to prove that the victim actually suffered serious bodily injury, the prosecution nonetheless told the court that it would be admitting the victim's medical records through Detective Lenherr, instead of through the doctor.  And as analyzed above, the court allowed the prosecution to do just that.

¶ 30    Finally, the prosecutor's own actions at trial belie the People's argument on appeal that the errors were harmless.  If the detective's "brief comment" hadn't mattered, then the prosecutor wouldn't have relied on it during closing argument: "You heard from Detective Lenherr that she got an SBI (serious bodily injury) form. [The victim] completed a [medical release] form.  There was a

medical release, and *the contents of the medical records corroborated her investigation.*" (Emphasis added.)

¶ 31     For all these reasons, we conclude a reasonable probability exists that the court's error contributed to Smith's conviction, meaning a probability sufficient to undermine confidence in the outcome of Smith's conviction for attempt to commit second degree assault. Accordingly, we reverse the attempt to commit second degree assault conviction and remand that count for a new trial.

¶ 32     But we reach a different conclusion regarding the third degree assault conviction. The prosecution's burden to prove third degree assault was substantially different than its burden on the attempted second degree assault charge. To prove third degree assault, the prosecution did not have to prove serious bodily injury. Instead, the prosecution only had to prove that the victim suffered some "physical pain" from the defendant's actions. § 18-1-901(3)(c). The evidence that the victim suffered some physical pain, which included not only the neighbor's testimony but also photos of visible red marks on the victim's neck, was overwhelming. Therefore, we conclude that the error identified above was harmless with respect to the third degree assault conviction.

IV.  Smith's Remaining Contentions Do Not Require Reversal of the
Third Degree Assault Conviction

A.  The Medical Release Form

¶ 33  Smith contends that the trial court erred by admitting the victim's "irrelevant" medical release form.  We disagree.

¶ 34  As previously discussed, during Detective Lenherr's testimony, the prosecution asked her whether she was able to obtain the victim's medical records related to the November incident.  More specifically, the trial court overruled defense counsel's "relevance" objection and allowed the prosecution to introduce into evidence an "authorization for disclosure of protected health information" form signed by the victim.

¶ 35  The medical release form shows that the victim had authorized the hospital to disclose her medical records to law enforcement officials.  The form covers a period of three days and shows that the victim specifically authorized the disclosure of three types of information for those three days: her "[e]ntire [m]edical [r]ecord," her "[r]adiological [r]eports and films," and her "[l]aboratory [r]esults."

¶ 36    Smith persists in his argument that the medical release form was irrelevant. And, for the first time on appeal, Smith argues that, even if the form was relevant, the danger of unfair prejudice outweighed its probative value under CRE 403.

¶ 37    Only relevant evidence is admissible. CRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403.

¶ 38    We conclude that the medical release form was relevant to show that the victim sought medical treatment after the November incident. *See* CRE 401. Even if we were to assume, without deciding, that it was error to admit the evidence under CRE 403, any prejudice flowing from this unpreserved error does not require reversal. *See People v. Ujaama*, 2012 COA 36, ¶¶ 36-38; *Am. Fam. Mut. Ins. Co. v. DeWitt*, 216 P.3d 60, 66-67 (Colo. App. 2008) (relevance objection does not preserve a CRE 403 objection), *aff'd*,

218 P.3d 318 (Colo. 2009); *see also People v. Alfaro*, 2014 CO 19,

¶ 8 ("[E]rror cannot rise to the level of plain error if it is harmless.").

### B.     Prosecutorial Misconduct

¶ 39     Smith contends that the prosecution committed misconduct when it "repeatedly called attention to inadmissible evidence" (referring to the victim's medical records).  Relatedly, he contends that the prosecutor's improper comment in closing argument that the jury "heard from Detective Lenherr that she got [a serious bodily injury] form" requires reversal.

¶ 40     We apply a two-step analysis to claims of prosecutorial misconduct.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  We first determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances."  *Id.*  If it was improper, we then determine whether the misconduct warrants reversal under the appropriate standard of reversal.  *Id.*  Because Smith properly preserved his prosecutorial misconduct arguments for appellate review, we apply the nonconstitutional harmless error test when deciding whether reversal is required.  *See Davis*, ¶ 13.

### 1. Repeatedly Calling Attention to Inadmissible Evidence

¶ 41　We agree with the premise of Smith's argument, which is that the prosecution repeatedly sought to elicit inadmissible evidence regarding the victim's medical records.  However, because the prosecution's questions to Detective Lenherr were within the scope of the trial court's somewhat ambiguous rulings, we can't conclude that the prosecution committed misconduct.  For example, when the prosecution informed the court of its plan to admit the entirety of the victim's medical records into evidence through Detective Lenherr, the court reserved ruling on whether it would allow the admission of portions of the records.

¶ 42　Though, as we concluded in Part III, the court abused its discretion in its later rulings admitting improper hearsay evidence, we can't conclude that the prosecution was acting improperly by offering and then commenting on evidence the court ruled *was* admissible.  *Cf. People v. Fortson*, 2018 COA 46M, ¶ 14 (noting that it is improper for prosecutors to purposefully ask a question that they know will elicit an inadmissible answer).

## 2. Closing Argument

¶ 43    In closing argument, the prosecutor told the jury, "[W]e have to prove that [Smith] committed a substantial step" toward the elements of assault in the second degree. Then, after reading the definitional instruction of serious bodily injury, the prosecutor said:

> We heard about how when Officer Cao responded . . . to the emergency room, he could see that [the victim's] shoulder . . . that something was wrong with her shoulder. You heard from Detective Lenherr that she got an SBI form. [The victim] completed a HIPAA form. There was a medical release, and the contents of the medical records corroborated her investigation.

¶ 44    Defense counsel objected. After a brief bench conference, the court sustained defense counsel's objection, struck the statement, told the jury to "disregard the statement made about the medical records," and instructed the jury that it "may not consider that statement for any purpose."

¶ 45    As the People concede, the prosecutor "misspoke." Because we agree with this concession by the People, we turn to whether the improper statement requires reversal of the third degree assault

conviction and conclude that it does not.[4] *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005). For a few reasons, we conclude that, in the context of the third degree assault claim, the prosecutor's improper statement was harmless.

¶ 46 First, the prosecutor's improper argument didn't significantly risk a guilty verdict on the third degree assault charge based on considerations other than the evidence presented at trial. *See Fortson*, ¶ 67.

¶ 47 Second, the sustaining of defense counsel's objection, along with the trial court's instruction to the jury to disregard inadmissible evidence, sufficiently remedied the offending argument. Indeed, the trial court immediately sustained defense counsel's objection and instructed the jury to disregard the prosecutor's argument. Absent evidence to suggest otherwise, we presume that the jury followed the court's instruction. *Bondsteel v. People*, 2019 CO 26, ¶ 62.

---

[4] As explained above, the detective's improper "consistency" testimony requires reversal of the attempted second degree assault conviction.

## C.    Cumulative Error

¶ 48    Finally, Smith contends that the conceded and alleged errors cumulatively require reversal.  Although we identified two errors, there is no reversible cumulative error given the overwhelming evidence of guilt as to the third degree assault conviction.  *See People v. Mendenhall*, 2015 COA 107M, ¶ 82; *see also People v. Conyac*, 2014 COA 8M, ¶ 152 ("[A]lthough we have found some errors, because we do not perceive that they substantially prejudiced defendant's right to a fair trial, there is no reversible cumulative error.").

## V.    Disposition

¶ 49    Smith's conviction for third degree assault is affirmed.  His conviction for attempted second degree assault is reversed, and the case is remanded for a new trial on that count.

JUDGE LIPINSKY and JUDGE TAUBMAN concur.

22